JONES, Judge.
Plaintiffs seek damages for loss of their soybean crops due to flooding on July 8, 1975, allegedly caused by defendant’s levees which obstructed plaintiffs’ natural drain. Plaintiffs also seek an injunction ordering the removal of the levees obstructing the natural drain, or alternatively, ordering defendants to provide drainage through the levee system. The trial court awarded plaintiffs judgment for damages to their crops, but denied the injunctive relief. Expert witness fees of $600 were awarded plaintiffs. Defendant appeals and plaintiffs answer. We grant injunctive relief and, as modified, affirm.
To facilitate an understanding of the issues presented, we include a rough sketch of the lands involved.

*1328

The farm land is located in Richland Parish, a short distance east of Lafourche Canal which provides drainage for the area. The Morris tract, a flat woodsland area, is the estate through which waters from east flow before reaching Lafourche Canal. The natural drainage for the Hill and Craighead properties is east to west over the Mott land, then across Morris to Lafourche, and for the Cole property north into Mott, then west to Lafourche. The Mott property is lower in elevation and the servient estate to the dominant Cole, Hill and Craighead estates, all of which are higher in elevation. Plaintiffs have engaged in no activity which increased the defendant’s natural drainage burden.
The farmers who leased Mott’s land in 1973 made a poor bean crop because of water draining on the Mott tract from higher surrounding farms while plaintiffs’ lands suffered little, if any, water damage and had a substantial bean yield. In 1974 defendant built levees two feet high along his north, south and east borders in order to use his lands for growing rice. During the summer of 1974, plaintiffs’ crop on acreage adjacent to defendant’s levees suffered flood damage. Defendant paid plaintiffs for these crop losses due to flooding caused by defendant’s levees impeding natural drainage from plaintiffs’ properties. In 1974, following settlement of plaintiffs’ damage claim, defendant constructed ditches adjacent to and outside his levees in an effort to provide substitute drainage for the water that flowed direct upon defendant’s property prior to the construction of the levees.
In June, 1975, plaintiffs’ crops received damage due to back water from Lafourche Canal which overflowed because of heavy rains in the area. Plaintiffs replanted soybeans in late June after the waters receded within the banks of the canal. On July 8th plaintiffs received a three to four inch rain. The water from this rain would normally have drained from plaintiffs’ farms within a one day period; however, because of drainage obstruction created by defendant’s levees, it remained ponded for three to four days on approximately 18 acres of plaintiffs’ young soybeans adjacent to defendant’s east and south levees. At this time Lafourche Canal was within its banks and no water backed up from Lafourche through the Morris estate to plaintiffs’ *1329 lands. The flooding problem was due solely to defendant’s obstruction of natural drain. Plaintiffs’ beans located on the flooded acreage were destroyed.
The issues on appeal are (1) the correctness of the trial judge’s finding that.the flooding was caused by defendant’s levees obstructing the natural drainage; (2) are plaintiffs entitled to injunctive relief? and (3) was the amount fixed for expert witness fees proper?
LSA-C.C. Art. 660[1] provides for a servitude of natural drain due by the servient or lower estate to the dominant or higher estate by which the lower estate must receive waters naturally flowing from the superior estate. The servient and dominant estates owe each other reciprocal obligations, the servient, not to obstruct or hinder natural drainage from the superior estate and the dominant not to increase the burden of drainage.
Defendant’s principal assignment of error is the failure of the trial judge to accept the testimony of eleven witnesses called by defendant to establish the damages were caused by backwater created by an excessive rain on July 8, 1975, and were unrelated to defendant’s levees. Although the trial court’s findings of fact are entitled to great weight on appeal, we are required to independently review and evaluate the law and facts presented. Canter v. Koehring Company, 283 So.2d 716 (La.1973). The trial court found defendant’s estate owed plaintiffs’ estates a servitude of drainage and on July 8, 1975, following a three or four inch rain, plaintiffs’ soybean crops were damaged because of defendant’s levees impeded the natural drainage and his substitute ditches were inadequate to properly drain the plaintiffs’ lands.
A careful review of the testimony of each witness, including defendant’s eleven witnesses, establishes the correctness of the trial court’s conclusion. The testimony of plaintiffs’ witnesses was logical, supported by sound reasons, and corroborated by facts and circumstances. Where the trial court’s conclusions are in conflict with the testimony of defendant’s witnesses, we found justification in the record for the trial court to disregard this testimony.
The record supports the trial judge’s findings of fact and his award of damages.
ARE PLAINTIFFS ENTITLED TO AN INJUNCTION?
The trial court based its refusal to enjoin defendant from obstructing the natural drain on the ground that plaintiffs could adequately be compensated in money for any future crop losses attributable to defendant’s levees.
The injunction has historically been recognized as a remedy available to assure the continued use of a servitude of drain over another’s land. Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972).
In Broussard v. Cormier, 154 La. 877, 98 So. 403 (1923) an injunction was issued requiring defendant to remove a levee obstructing a servitude of drain in order to facilitate the raising of rice on the dominant estate. In Brown v. Blankenship, 28 So.2d 496 (La.App., 2d Cir. 1946), silt, vegetation and debris obstructing a natural drain were ordered removed from the drainage bed located on the servient estate in order that cotton and alfalfa could be raised upon the dominant estate. In Cornett v. Hebert, 31 So.2d 446 (La.App., 1st Cir. 1947), an injunction was issued ordering the removal of a dam obstructing a servitude of drain to eliminate flooding which precluded the raising of Lespedesa and Dallas grass upon the dominant estate. In Poole obstructions to drainage preventing *1330 the water from flowing from the dominant estate to the servient estate were ordered removed to facilitate the growing of timber upon the dominant estate.
Defendant’s levees obstruct the natural drain and prevent plaintiffs from successfully raising soybeans or other crops on portions of their lands adjacent to the levees. The record reflects these levees have effectively destroyed plaintiffs’ soybean crops on approximately 18 acres immediately adjacent to levees for three consecutive years, 1974, 1975, and 1976. Plaintiffs are entitled to the natural drain under LSA-C.C. Art. 660 and defendant has no right to obstruct it. See also LSA-C.C. Art. 667[2] which provides that defendants have no right to use their land in such a manner as to deprive plaintiffs the liberty of enjoying their lands.
The court in Poole pointed out a dominant estate has never been relegated to compensatory damages, but rather the servitude of drain has always been enforced by injunction. The court in Poole refused to consider the possibility of permitting the servient estate to pay damages in lieu of removing the obstruction of drainage and recognized the right of the dominant estate to be free of the obstruction so the owner could use the property for his own purposes. We conclude the servient estate owes an absolute duty to the dominant estate to receive waters which naturally flow upon it, and the servient estate is not entitled upon the payment of damages to obstruct the natural drainage.
The trial court denied the injunction on the additional ground that plaintiffs were lessees rather than owners and for that reason did not have the right to enforce this servitude of drainage owed the dominant estate.
A lessee is entitled to the benefits to be derived from the use of the property for the purposes contemplated by the lease. The lessee of farm property by the very nature of the lease is entitled to the benefits and privileges inherent in the leased premises necessary and advantageous to the full production of the crop. The servitude of drain which the leased property enjoys over a servient estate is an important element of the agricultural productivity of the leased premises. The lessee who acquires from the owner the right to grow the crop upon the land also acquires the advantage of any servitude of drain owed the leased premises and the right to assure the availability of natural drain by injunction.
In Salter v. B. W. S. Corporation, Inc., 290 So.2d 821 (La.1974), a lessee was awarded an injunction against activity of an adjoining landowner which could damage the lessee’s water well. There is no distinction between the actions of an adjoining landowner in damaging a lessee’s water well in contravention of LSA-C.C. Art. 667 and in obstructing a lessee’s natural drain in contravention of LSA-C.C. Arts. 660 and 667. His activities in each case are subject to an injunction.
Plaintiffs as lessees are entitled to the injunctive remedy against defendant’s interference with the natural drain.
Plaintiffs contend the expert witness fee of $600 awarded for their expert was inadequate when considering the expert spent 30 hours in preparation, made several trips to the subject property, paid wages to his employees and testified two days at trial. The trial court has much discretion in setting an expert witness fee, after determining the degree of skill of the witness, the time spent in preparatory work, the extent and nature of the work performed, the time spent away from his job, along with the actual time spent in court. The trial judge did not abuse his discretion in determining the fee. Schamens v. Crow, 326 So.2d 621 (La.App., 2d Cir. 1976) and Succession of Moody, 306 So.2d 869 (La.App., 1st Cir. 1975).
*1331 There was evidence as to possible alternatives available to defendant to provide drainage to plaintiffs’ estate comparable to the drainage existing before construction of the levees without the total removal of the levees.
For the reasons assigned we order the trial court judgment amended to include the following injunction: Defendant is enjoined from obstructing plaintiffs’ natural drain and ordered to remove the levees located on the east and south sides of his property, or alternatively to provide a system of drainage for plaintiffs’ estates which will be comparable to the drainage available to plaintiffs’ property prior to the construction of the levees.
As amended, the trial court judgment is affirmed at defendant’s costs.

. Art. 660.
“It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
“The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
“The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.”

. Art. 667.
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”