JONES, Judge.
R. L. Walters and Gerald Thrasher appeal a judgment rendered in these consolidated cases which litigation was spawned by a dispute over whether or not there existed a servitude of natural drainage in favor of a farm leased by Thrasher over a farm leased by Walters, and a trespass by Thrasher upon the Walters’ farm.
Thrasher, believing his farm had a servitude of drainage over the Walters’ farm, on March 8, 1979 commenced construction of a ditch 3 ft. wide and 2 ft. deep upon his leased farm at the head of a shallow lake (Ida Lake) at a point approximately 150 yards southwest of the line dividing the Thrasher and Walters farms. Thrasher continued with this ditch in a northwesterly direction across the property line and for a distance of approximately 100 yards onto the Walters farm, at which point Walters discovered the ditching activity and stopped the backhoe operator doing the work from proceeding further onto his farm.
*559 Walters dammed the ditch on his property near the Thrasher line and sued Thrasher seeking an injunction against him from trespassing upon his farm and for damages in the nature of mental anguish, humiliation and inconvenience caused by the construction of the ditch. Thrasher answered and reconvened alleging the ditching work performed by his contractor was performed in a natural drain and consisted of cleaning out of an old ditch, and sought an injunction against Walters prohibiting him from obstructing the natural drain by maintenance of the dam and for damages caused to his farming operation by water backing over his field due to the existence of the dam. Thrasher further denied that he was a trespasser upon Walters’ farm when he constructed the ditch for the reason he had secured verbal permission from one of Walters’ lessors authorizing him to clean out the natural drain. Thrasher then filed a separate suit against Walters seeking substantially the same relief sought by him in his reconventional demand filed in the Walters’ suit.
The trial court found Thrasher’s farm was the dominant estate and Walters’ farm was the servient estate, and that the latter owed a servitude of drainage to the former at the location where the ditch was constructed by Thrasher. The trial court ordered Walters to remove the dam and cease any activity which interfered with the natural drain, and Walters was also enjoined from disturbing the ditch constructed by Thrasher. The trial court found Thrasher to be a trespasser upon Walters’ farm and enjoined him from any further activity upon the Walters’ farm and awarded Walters a judgment for $650 damages against Thrasher for the trespass. Walters and Thrasher each appeal.
Walters assigns as error the trial court’s finding that Thrasher’s farm had a servitude of drainage over his farm. Walters further complained that he should not have been ordered to remove the dam because it did not obstruct the natural drain. He further complained that the trial court was in error for prohibiting him from filling in the ditch because the ditch created a drain where none had theretofore existed, or alternatively increased the burden of the drainage servitude. Finally Walters complained that the $650 judgment awarded him for Thrasher’s trespass was inadequate to compensate him for his damages of mental anguish and inconvenience which the ditch caused him by dividing his two fields. Walters contends that before the ditch existed he could drive his tractor and attached equipment across the little swag (where the ditch was dug) from one field to the other, and after construction of the ditch he was required to take a long route upon a blacktop road in order to go from one field to the other.
Thrasher assigns as error the trial court’s failure to award him damages caused to his farming operation by water backing up from Walters’ dam which obstructed the natural drain. He further complained the trial court erred in finding him to be a trespasser and based upon this finding awarded Walters damages.
The issues presented by the assignments of error are: (1) was there a servitude of natural drainage from the Thrasher farm across the Walters farm at the location of the ditch and the dam? (2) if there was a natural drain at this location, was the court correct in ordering the dam removed? (3) was Thrasher a trespasser when he went upon the Walters’ farm and dug the 100 yard ditch? (4) if Thrasher was a trespasser did the trial court abuse its discretion in awarding Walters only $650 in damages? (5) did the trial court err in ordering Walters to leave the ditch on his farm unaltered? and (6) did the trial court err in rejecting Thrasher’s demand for damages caused to his farming operation by the action of Walters’ constructing the dam?
NATURAL DRAIN
LSA-C.C. art. 655 provides:
“An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow.”
*560 There is an abundance of evidence in the record establishing that water drains westerly and northwesterly from the Thrasher farm through the area of the Walters farm where the ditch was dug. Not only was there testimony by numerous witnesses who had actually seen the water draining through the area, but also there was a civil engineer from the Louisiana Department of Public Works who identified a drainage improvement map of the Department which had been prepared in 1962 covering the area in dispute which corroborated the testimony of Thrasher’s lay witnesses that the water drained from the Thrasher farm over the Walters farm at the site of the ditch. Charlie Kile, Walters’ former farming partner on the farm who was Walters’ witness at trial, also testified that the drainage servitude existed:
Q. Have you seen water come through this swag type natural drainage you are talking about from Ida Lake (located on Thrasher’s farm) across the Place lands? (Walters’ farm).
A. Yes, sir.
Q. Have you seen any other water from the Coates land (Thrasher’s farm) come through this swag on to the Place (Walters’ farm) lands?
A. Yes, sir.
Q. And it would fall from the Coates (Thrasher’s farm) land to the Place (Walters’ farm) land?
A. Right.
(Id. p. 108 TR.) .
The trial judge was correct in finding Walters’ farm owed to Thrasher’s farm a CC art. 655 servitude of natural drainage.
WALTERS’ DAM
LSA-C.C. art. 656 provides as follows:
“The owner of the servient estate may not do anything to .prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome.”
Though Thrasher commenced his ditch at the head of the very shallow Ida Lake, the evidence established that his purpose in constructing the ditch was not to drain the lake, but to generally speed the flow of water from his farm over the Walters place and into Hanna ditch, a principal drainage canal which was located a short distance west of the area wherein the ditch was dug. There was no evidence that the ditch dug by Thrasher on his farm, or the extension of it over the low swag area on the Walter®’ farm had the effect of increasing the amount of water that the Walters’ farm received from the Thrasher farm.
In the decision of Nicholson v. Holloway Planting Co., 229 So.2d 679 (La.1969), the court quoted with approval the following language of Chandler v. City of Shreveport, 169 La. 52, 124 So. 143 (1929):
“It is true that this court has repeatedly held, in the interest of agriculture, that the proprietor of an upper estate may ditch his farm or plantation for agricultural purposes, even though the incidental effect of such ditching may increase the rapidity of the flow when it reaches the lower estate. * * * In other
words, the proprietor of an upper estate may make such works as tend to accelerate and hasten the drainage of his own lands beyond the natural slow process. But he can do nothing which would tend to throw upon the lower estate the burden of receiving waters which would not otherwise drain upon it. * * Id. at 143.
Because the Walters farm was required to receive the water from the Thrasher farm and there was no evidence that the ditching activity on the Thrasher farm increased the volume of water flowing upon the Walters farm, or otherwise made the drainage servitude more burdensome, Walters had no right to construct the dam and obstruct the drainage. Pictures in the record establish that the dam was substantially higher and wider than the ditch. The effect of the dam was to obstruct the flow of the water through the natural drain. See Cole v. Mott, 351 So.2d 1326 (La.App. 2d Cir.1977), where the owner of a rice farm was enjoined from obstructing the natural drain of a soybean field. The rice farmer *561 was ordered to remove a levee around a rice field, or alternatively to provide supplemental drainage in lieu of the natural drain being obstructed by the levee. The judgment correctly ordered Walters to remove the dam.
WAS THRASHER A TRESPASSER?
Walters had a written recorded lease on the farmland where Thrasher dug the ditch. Thrasher admitted he was well aware of the existence of the lease at the time he sent his contractor with a backhoe upon Walters’ farm and dug the ditch 3 ft. wide and 2 ft. deep. As the owner of the agriculture lease covering this property, Walters was entitled to possession of it free of any disturbance.
In the decision of Esmele v. Violet Trapping Co., 187 La. 728, 175 So. 471 (1937), the court discussed the right of the lessee against a trespasser in the following language, to-wit:
“Lease is a contract by which one party gives to another the enjoyment of a thing for a consideration. Civil Code, Arts. 2669-2674. Plaintiff’s allegation that he was lessee of this land was equivalent to saying that he had the use, the enjoyment of it, and that it had been delivered to him. Civil Code Art. 2692. A lessee who has been put in possession of a thing is, during the term of the lease, the proprietor of it. He has the legal right to use it. He is the quasi owner of it. New Orleans City Railroad Co. v. MeCloskey, 35 La. Ann. 784. If he is disturbed in his possession by a trespasser he has the right of action against such trespasser to recover damages. Civil Code, Art. 2703.” Esmele at p. 474.
Thrasher’s farm was the dominant estate and Walters’ farm was required to receive the water from it and though Thrasher could engage in activity upon his own farm which would cause the water to flow faster from it onto Walters’ farm, he had no right to enter upon Walters’ farm and perform any activity whatsoever.
As was said in the very earlier case of Sharpe v. Levert, 51 La.Ann. 1249, 26 So. 100 (1899):
“. . . There was no warrant or justification for Sharpe’s going upon Levert’s property and digging a ditch thereon through the coulee. Landry v. McCall, 3 La.Ann. 134. He was guilty of a wrong and trespass in so doing, and can predicate no right upon it. Plaintiffs say the ditch was of benefit to defendant, but a trespass cannot be justified or continued on the ground of its being beneficial to the party trespassed upon. Even benefits cannot be forced upon a person without his consent. They should be ordered to fill up said ditch and replace matters to the situation in which they were prior to the digging of the same.” Id. at 102.
See also Thibodeaux v. Landry, 351 So.2d 522 (La.App. 3d Cir.1977), wherein the Sharpe v. Levert case was cited with approval and a preliminary injunction was ordered prohibiting the owner of a dominant estate from trespassing upon the ser-vient estate for the purpose of cleaning out drainage ditches to facilitate the flow of water from the dominant estate to the ser-vient estate.
Thrasher contends that he was not guilty of trespass because he had the verbal authority from one of the co-owners of the property leased by Walters, who allegedly functioned as manager for the other three co-owners of the Walters’ property. Thrasher, however, admitted being aware that Walters had the property leased, 'and under these circumstances he therefore knew that Walters was entitled to undisturbed possession of the property, and for this reason Thrasher should not have gone upon the property with the backhoe and dug the ditch without having first sought the permission of Walters. His failure to do so results in his ditching activity being legally a trespass upon the Walters farm.
JUDGMENT PROHIBITING WALTERS FROM FILLING IN DITCH
While there is some testimony that Thrasher’s ditching activity was conducted by him at the site of an old ditch, and that *562 all he was doing was cleaning it out, by far the great weight of the evidence establishes that the area where the ditch was constructed was nothing more than a swag through which the water from Thrasher’s farm drained naturally. If the trial court’s judgment ordering Walters to leave the ditch undisturbed is a factual finding by the trial court to the contrary, it is not supported by the evidence and is clearly wrong.
In the case of Sharpe v. Levert, supra, the owner of a dominant estate who trespassed upon the servient estate and dug a ditch in the bottom of a coulee which served as a natural drain was required to fill up the ditch:
“They should be ordered to fill up said ditch, and replace matters to the situation in which they were prior to the digging of the same.” Id. at 102.
In Thibodeaux v. Landry, supra, the court recognized that the owner of a natural servitude of drainage may not install culverts or enlarge a ditch upon the servient estate:
“. . . defendants have not proved at this juncture that they have more than a natural servitude of drain; therefore they are not entitled to install culverts on plaintiff’s property or to enlarge the ditch.” Id. at 525.
While Thrasher was entitled to the natural drain, he was not entitled to construct a ditch and Walters is not required to leave the ditch constructed by Thrasher intact. He is entitled to fill up the ditch and place the area where it was constructed in identically the same condition it was just prior to the time Thrasher constructed the ditch upon it. Walters must, however, in connection with his activities of filling in the ditch, be certain that none of his dirt work has the effect of in any way obstructing the natural drain. We therefore conclude that the portion of the trial court’s judgment should be amended to omit that portion of it which requires Walters to leave the ditch undisturbed, but the judgment requiring him to remove his dam and prohibiting him from otherwise obstructing the natural drainage should remain unchanged.
DAMAGES
Walters contends that the trial court’s award for damages in the amount of $650 was inadequate and that it should be increased to $5,000 in order to compensate him adequately for his mental anguish and inconvenience. The evidence established that the natural drain upon which the ditch was dug is impassable except during the dry seasons of the year. The area where the ditch was constructed was located in a relatively remote area and divided two fields where Walters planted crops, and was used by Walters for the purpose of going from one field to the other. Walters’ only use of the area was to cross between the two fields with his farming equipment when there was farming going on in his fields.
Thrasher testified he had earlier received verbal permission from one of the co-owners of the Walters’ farm to construct the ditch in the natural drain. This testimony was corroborated by a written ac-knowledgement of the co-owner (he was in the hospital at time of trial, and later died) in authentic form which acknowledged the servitude and the verbal permission given to Thrasher to dig the ditch. Walters objected to the admissibility of the document. as hearsay but we conclude it was admissible as a statement against interest and as such an exception to the hearsay rule. See Campbell v. American Home Assurance Co., 260 La. 1047, 258 So.2d 81 (1972). The backhoe operator whom Thrasher employed to dig the ditch stopped work immediately upon being requested to do so by Walters and there was no further ditching activity. These circumstances show some good faith on the part of Thrasher and tend to soften his status as a bad faith trespasser.
The construction of the 100 yard long, 3 ft. wide, 2 ft. deep ditch, under the circumstances set forth hereinabove, should not have created any substantial mental anguish on the part of Walters. Thrasher testified that he offered to install a culvert and had a bulldozer with which to do the work in order to facilitate Walters’ crossing *563 of the ditch with his equipment, and there is no testimony in the record contradicting Thrasher’s testimony on this point. There is also evidence in the record to establish the entire ditch could be filled in with the same backhoe and the same dirt that came out of it within three to five hours at a cost of $45 per hour. There would remain some slight depression in the ditch because the dirt taken from it would not be quite enough to fill it up, but such a depression should not preclude a farm tractor and other equipment from crossing over this ditch when the work was done. Assuming it takes five hours to fill in the entire ditch, it would cost $225 which would result in the filling up of that portion of the ditch on Walters’ property costing less than $150. For these reasons it would appear that the inconvenience caused Walters by the ditch can be cured for less than $150 and probably could have been cured earlier if Walters had accepted Thrasher’s offer of the culvert. Assuming the cost of the cure of inconvenience is $150, the trial court’s judgment of $650 leaves $500 available to compensate Walters for his mental anguish.
Walters contends the following trespass cases require an increase in the amount of the damage award:
(1) Scarbrock v. Fowler, 317 So.2d 285 (La.App. 3d Cir.1975), wherein the court affirmed a $2,000 mental anguish award and a $12.00 property damage award; (2) Hayward v. Carraway, 180 So.2d 758 (La.App. 1st Cir.1965), wherein plaintiff was awarded $3,500 for the cost of restoring damaged property and $3,000 for mental anguish;
(3) Campbell v. Gray, 294 So.2d 841 (La.App. 2d Cir.1974), wherein plaintiff was awarded $500 for actual damage and $1,500 for mental anguish;
(4) Turner v. Southern Excavation, Inc., 322 So.2d 326 (La.App. 2d Cir.1975), wherein plaintiff was awarded $1,500 for actual damage and $3,500 for mental anguish.
In the assessment of general damages: “. . . much discretion must be left to the [trial] judge . . ” LSA-C.C. art. 1934(3).
This code article was construed in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), where the court explained the function of the appellate court in reviewing the damage award to be:
“. . . whether the judge . has abused its discretion in fixing the award.” Gaspard at 158.
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), the court pointed out that before an appellate court can change an award made by the trial judge the record must clearly reveal that the trier of fact abused his discretion in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979) reiterates the Coco rule and states:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion’, La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive (citations omitted) or insufficient.” Reck at 501.
The role of prior awards in previous cases in the initial determination of whether there is an abuse of discretion is limited by Reck as follows:
“In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function if indeed the facts and circumstances of the prior awards are closely similar to the ■ present, [our emphasis].
The prior awards may serve as an aid in this determination [i. e., the initial determination or excessiveness or insufficiency] only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) ‘similar’ injuries . . . ” Reck at 501.
In Scarbrock v. Fowler, supra, there is no indication in the opinion that the defendant *564 assigned as error the $2,000 general damage award. The opinion reflects that the defendant operated a bulldozer over some 15 acres of plaintiff’s property and destroyed two-thirds of a fence along a 7 acre tract and numerous trees.
In Hayward v. Carraway, supra, the defendants trespassed in plaintiff’s antebellum home which was constructed in 1841 on three separate occasions. They broke out numerous windows, destroyed mantels on two fireplaces, damaged stairway ballisters, window shutters, and the roof. The plaintiff, an elderly lady, was deeply attached to this antebellum home and had spent some 15 years of her life and $70,000 in refurbishing it.
In Campbell v. Gray, supra, the defendant cut a deep ditch for a pipeline across the lawn of plaintiff’s residence.
In Turner v. Southern Excavation, Inc., supra, the defendant trespassed upon plaintiff’s lot for some several months over her continuing objection and destroyed numerous fruit and flowering trees, all of esthetic value.
Prom the facts given above taken from the cases cited by Walters, it is apparent that all of the cases are substantially dissimilar from the present case and none of them fits the Reck test that:
“. . . the facts and circumstances of the prior awards are closely similar to the present.” Id. at 501.
These cases cannot be considered as establishing an abuse of the trial court’s great discretion in the damage award here made.
The trial court’s award of $650 for the construction of the 100 yard ditch in the low swag drain area between two agricultural fields in a relatively remote area by a trespasser not guilty of gross bad faith cannot be considered as an abuse of discretion within the guidelines of Coco and Reck, supra, to justify our increasing the award.
The record contains no evidence of damages sustained by Thrasher as result of the construction of the dam and for this reason the trial court was correct in rejecting his claim for damages.
The trial court judgment is AMENDED to delete the provision enjoining R. L. Walters from filling in the ditch constructed on his farm by Gerald Thrasher, and as AMENDED is AFFIRMED.
All costs on appeal are assessed equally to R. L. Walters and Gerald Thrasher.