Defendant appeals from the judgment ordering him to remove brush and obstructions within the natural drain, leading from land of plaintiff onto and across the land of defendant to Squirrel Bayou, and to restore the depth of the drain so that the surface waters may flow unimpeded through the natural drain into Squirrel Bayou.
Plaintiff owns one-half interest and has the usufruct of the other half interest in a tract of land described as S1/2 of Section 22, Township 11 N, range 10 W, east of Jim River in Natchitoches Parish, and defendant owns all that part of Section 23, Township 11 N, range 10 W, lying west of the one-half section line beginning at a point where said line crosses Squirrel Bayou, thence running north to Deep Bayou, thence along the east branch thereof to Bayou Pierre. Defendant's land lies directly east of the land of plaintiff and is separated from it by a public highway running north and south on the land line.
Plaintiff alleges that from time immemorial, surface waters from his land have drained off through a natural channel across a part of defendant's land, which *Page 497 
leads into Squirrel Bayou and thence into Bayou Pierre. He alleges that the former owner of the lower estate, now owned by defendant, kept this natural drain open so that surface waters readily drained off, but that in recent years by reason of neglect, defendant has permitted the natural drain through and over his land to become choked with a dense growth of underbrush and saplings which have caught and accumulated a mass of floating objects and caused the bed of the drain to be raised by accumulation of silt, and that as a result thereof, the surface water remains on plaintiff's land destroying his growing crops and causing him serious damage.
He alleges that the only way waters from his land and land lying above him can drain off is by their natural flow through defendant's property into Squirrel Bayou; that during the late crop season he lost 20 acres of cotton as a result of water standing on the land, and that 20 acres of alfalfa were seriously curtailed in production by reason of inability of the water to flow through the obstructed drain.
He alleges that he has frequently complained to the defendant of the damage, and has demanded that he restore the bed of the drain to its natural depth, but to no avail.
Defendant answered denying generally the allegations of the plaintiff's petition, except that he admitted that the drain complained of may be grown up in trees, brush, and undergrowth, for the reason, he alleges that it has not been used as a drain for more than 20 years, if it ever was so used. He admits having some conversations with the plaintiff about drainage in the vicinity of their respective lands.
Further answering, he alleges that if the drain is opened as prayed for by plaintiff that 28 acres of his land will become unfit for cultivation. He contends that the land of both plaintiff and defendant is in the vicinity of Squirrel Bayou, which is the natural drain for lands in that vicinity and that it is more feasible for plaintiff to drain his land directly into Squirrel Bayou. He further alleges in the alternative that the plaintiff has long since abandoned and lost the right of drain over defendant's land by non-use and that within the knowledge of plaintiff, the former owner of defendant's land more than 20 years ago closed said drain since which time it has not been used as an artery of drainage for land in its vicinity and by reason thereof plaintiff has lost all right to now contend for reopening said drainage for his property. The prayer is in accordance with the allegations of the answer.
On the trial of the case, two surveyors, V.G. Hyams for plaintiff, and W.L. Mangham for defendant, testified, and plats of the properties prepared by each are in evidence. There is practically no difference in their findings and no disagreement that the natural drain is from west to east across the property of defendant. All of the testimony in the case is to the effect that both tracts of land are practically level river bottom lands and that there is very little difference in the elevation. However, plaintiff's place slightly higher than that of defendant and the natural flow of the water is across defendant's land. Squirrel Bayou is a rather deep bayou with a ditch leading out of it over the land of defendant toward plaintiff's land and for some distance has eroded into a rather large ditch measuring 30 feet wide and 10 feet deep at one point, becoming narrower and shallower going back toward the Brown property. There is what is referred to by the witnesses as a low swag at the east end of the woods extending almost to the beginning of the eroded ditch, and from this swag back through the woods is a ditch about three feet wide and from six inches to one foot deep, running under the bridge that crosses the road that is the boundary between the properties. This ditch is grown up in weeds and underbrush and partly filled with silt and the clearance under the bridge is small.
Defendant and some of his witnesses contend that it would be feasible for the plaintiff to deepen the ditch along the highway north up to where the highway crosses Squirrel Bayou and thus drain the water from the low part of his property directly into Squirrel Bayou, but all of the evidence shows that it would require a ditch probably as deep as seven or eight feet in order *Page 498 
to give the water enough fall to run back north into Squirrel Bayou. We are not impressed that the plaintiff would be successful in such an effort.
All of the evidence is to the effect that the defendant's land is lower than that of the plaintiff and it therefore is due this servitude to the plaintiff's land. Art. 660, R.C.C. There is some testimony with reference to a small ditch leading from the highway on the property of W.A. Cagle, lying just south of defendant's property, northeasterly, and onto defendant's property, and connecting with or running into the low swag on defendant's property, and thence into Squirrel Bayou. Defendant contends that if this drainage was opened properly, it would drain the low land of plaintiff and C.L. Powell just south of him, and without any damage to defendant. But Cagle is not a party to this suit and therefore no judgment can be rendered against him.
Defendant in brief contends that Darby v. Miller et al., 6 La. Ann. 645, on which the lower court at least partly based its judgment, is not applicable, but we find that he is mistaken. In the Darby case it was shown that all the drains left open by defendants, through the causeways or roads, were partially filled by fallen timber and the succession of time, and that they were so grown up with flags that the water passes through them with great difficulty, and held that plaintiff had the right to cause these impediments to be removed and the natural drains restored to their original depths, saying that this was his proper remedy.
[1] That is exactly what plaintiff in the instant case is asking for, and is what the judgment of the lower court gave him. It is contended that because some of the testimony is to the effect that the drain in question, if it was ever an artery of natural drainage, has not been such for many years, that if it is now opened it will have to be excavated to some arbitrary depth and width. We understand the judgment to order only that the obstructions be removed, including silt, leaving nature to attend to the matter of whether the drain is deepened or widened. We do not believe the cases cited, Landry et al. v. McCall, 3 La. Ann. 134, and Kilgore v. Grevemberg, 10 La. Ann. 689, 63 Am.Dec. 597, are applicable to this case. In Sharpe et al. v. Levert, 51 La. Ann. 1249, 26 So. 100, the court held that the Coulee was a natural drain for plaintiff's plantation, but said he had trespassed on defendant's property when he dug a ditch through the Coulee, even though plaintiff claimed it was a benefit to defendant. The case has no application here.
[2] Finally, defendant says that the lands of plaintiff and defendant are located in an expanse of alluvial land, which may be described as flat or level land, surrounded by natural water courses, and can be drained in any direction, and that this is not a case of restoring the status quo between upper and lower proprietors, because it is not contended that defendant has committed any positive action affecting the drainage of the land in that area, and that the court is asked to establish a system of drainage for the individual benefit of plaintiff, and that instead of deciding the case, the parties should be referred to the Police Jury, which has the power under the provisions of Act no. 238 of 1924 to establish drainage districts on its own initiative, or by petition of land owners, that the establishment of a drainage district in the area would solve the problem of the parties and other land owners in the area.
The difficulty there is that the Police Jury might never make any move toward establishing a drainage district and plaintiff might never be able to secure enough petitioners to compel the establishment of a district. In the meantime his property would continue to suffer from the condition from which he is seeking relief.
After all, the question here is, whether or not plaintiff has made out a case for the relief he demands. We are of the opinion that the record justifies the decree rendered by the lower court.
For these reasons the judgment appealed from is affirmed at the cost of appellant in both courts. *Page 499