387 So.2d 1325 (1980)
Lydia Harrison RYAN, William H. Harrison, Jr., as executor of the Estate of William H. Harrison, Shirley Harrison Hyde, Katherine Harrison and Richard Harrison
v.
Saviour A. PEKINTO, Edward J. Pekinto, Joseph P. Pekinto, Peter Pekinto, III, Mrs. Peter Pekinto, Alvin Pekinto, Paul Pekinto, Gerald Pekinto, Mrs. Lillie Pekinto, Sprine G. Pekinto, Mrs. William Pekinto, Mrs. Louise Pekinto Starr, Lloyd P. Alombro, Lucien Alombro, Thomas Alombro, Jr., Thomas J. Alombro, III, Joyce Alombro, Clarence Alombro, Raymond Alombro, Dinishes Rayes Alombro, Frances Alombro McGovern, Gerald Alombro, Dave Schouest, Peter Helmer, Mrs. Joseph Helmer, George Helmer, Calvin H. McBride, James D. McGovern, Jr., Joe Revere, Ronald Helmer, Charles Guidry, Joseph Silver, Sr., John Silver, Sr., and Raymond Dufren.
No. 13335.
Court of Appeal of Louisiana, First Circuit.
July 7, 1980.
Rehearing Denied September 4, 1980.
*1327 Gary A. Lee, New Orleans, and Donald L. Peltier, Thibodaux, counsel for plaintiffs-appellees Lydia Harrison Ryan, William H. Harrison, Jr. as Executor of the Estate of William H. Harrison, Shirley Harrison Hyde, Richard Harrison, Katherine Harrison.
James D. McGovern, Jr., New Orleans, counsel for defendants-appellants Saviour Pekinto, Edward J. Pekinto, Joseph P. Pekinto, Peter Pekinto, III, Mrs. Peter Pekinto, Paul Pekinto, Gerald Pekinto, Mrs. William Pekinto, Lloyd P. Alombro, Lucien Alombro, Thomas Alombro, Jr., Thomas J. Alombro, III, Peter Helmer, Mrs. Joseph Helmer, James D. McGovern, Jr., Joe Revere, Ronald Helmer, Charles Guidry.
Before EDWARDS, LEAR and WATKINS, JJ.
EDWARDS, Judge.
Defendants appeal a trial court judgment making perpetual a preliminary injunction prohibiting defendants and their agents from trespassing on certain property of plaintiffs. We affirm.
This case is the second round in a most bitterly contested struggle over certain tracts of land in Lafourche Parish.[1] While there are different and additional parties on both sides, the basic opposing lineups remain the samethe Harrisons against various members of the Alombro, Pekinto and Helmer families.
Plaintiffs filed suit on December 2, 1977, seeking a writ of injunction prohibiting defendants from trespassing on the following property:
All of Fractional Section 1, South of Grand Bayou; all of Fractional Sections 2, 3 and 4; the SW ¼ of Sec. 5; the SE ¼ of SE ¼ of Sec. 6; the E ½ of NE ¼ of Sec. 7; the W ½ of NW ¼ and NW ¼ of SW ¼ and E ½ of SW ¼ and SW ¼ of SE ¼ of Sec. 8; the E ½ of SW ¼ and NW ¼ and E ½ of Sec. 9; all of Fractional Sections 10, 11, 12 and 13; the N ½ of E ½ of SE ¼ and NW ¼ of SE ¼ and NE ¼ of SW ¼ of Sec. 14; the N ½ and S ½ of S ½ of Sec. 15; the N ½ of N ½ and SE ¼ of NE ¼ and SE ¼ of Sec. 21; all of Sections 22, 23, 24, 25, 26, 27; the E ½ of Sec. 28; the E ½ of Sec. 33; all of Sections 34, 35, 36, all in T.19S., R.23E.
All of Sections 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, 21, 22, 23, 26, 27, 28, 33, 34 and 35, all in T.20S., R.23E.
Less and except a tract of land sold by Joseph DeFuentes Harrison to Leroy Schultz and Marguerite Brady, wife of Leroy Schultz, on March 22, 1939 (See C.B. 89, p. 575), containing that portion of *1328 Sections 2, 11 and 14 in T.19S., R.23E. bounded on the east by a line parallel to and 6,608 feet west of the range line between ranges 23 east and 24 east and on the west by a line parallel to and 8,266 feet west of the said range line bounded on the north by Grand Bayou and extending to and bounded on the south by the northern boundary or line of the S ½ of Sec. 14, T.19S., R.23E., comprising 373 acres, more or less.
Plaintiffs sought relief pursuant to LSA-C. C.P. Art. 3663, which provides in part:
"Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
Subsequent to the trial court's signing of a temporary restraining order, an extensive hearing was held, following which the trial court issued a preliminary injunction on January 30, 1980.
When the matter came up for trial to determine whether a permanent injunction should issue, all testimony and exhibits from the preliminary injunction hearing were adopted and incorporated into the record provided that no objections which had been made and overruled were waived. Additional testimony and exhibits were introduced. Briefs were filed by both parties and the matter was taken under advisement. On July 27, 1979, judgment was signed in plaintiffs' favor granting the relief prayed for. Defendants have appealed.
Appellants specify that the trial court erred in:
1. overruling defendants' exceptions.
2. admitting testimony and documentary evidence over timely objection.
3. finding plaintiffs to be the record owners and to have sufficient title to avail themselves of Art. 3663(2) of the La. Code of Civil Procedure.
4. finding that plaintiffs were in possession for more than one year prior to the filing of this suit.
5. failing to require plaintiffs to show valid title good against the world.
6. finding that defendants did not possess the disputed sections within marked boundaries.
7. finding that defendants were more trespassers than possessors and that the acts of defendants, while amounting to disturbances, did not oust plaintiffs from their possession or evict them from their property.
8. disregarding both defendants' recorded judgments of possession and the Alombro Cemetery.
9. finding that defendants had always been aware that plaintiffs were the legal owners of the property.
Shortly after suit was filed, exceptions of prescription, no right of action, no cause of action, insufficiency of service of process, insufficiency of citation, lack of jurisdiction over the persons of defendants, lack of jurisdiction over the subject matter, unauthorized use of summary proceeding vagueness, nonjoinder of necessary party, and nonjoinder of an indispensable party were filed on behalf of some defendants. Other defendants chose not to appear or to be represented by counsel.
Prior to hearing on the preliminary injunction, the trial court screened out all defendants who had not been properly cited and served. They were dismissed from the case.
Defendants' other exceptions were then considered. From the record, it is evident that the trial court carefully reviewed each of defendants' contentions before overruling it. We find no error.
We also find no error in the admission of testimony and documentary evidence over the objection of defense counsel.
*1329 For much of this trial, it was virtually impossible for either counsel to examine a witness or introduce evidence without facing an objection. One particularly noteworthy example was the direct examination of William H. Harrison, Jr., a plaintiff. During the questioning, Calvin H. McBride, counsel for defendants and a defendant himself, objected no less than fifty-seven times, at least once in a most contentious manner (R 1052-54). Counsel was sustained on only six objections.
A consideration of the incessant legal confrontations,[2] the great number of documents submitted, the inability of many witnesses, particularly defendants, to understand the hearsay rule, and the time period of fifty years during which the events transpired leads to the conclusion that the trial court was truly fair to all parties in these proceedings.
LSA-C.C.P. Art. 3663 provides injunctive relief in two separate cases: 1) as an ancillary remedy in a possessory action; and 2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory nor a petitory action. Official Revision Comments to Art. 3663. Unlike most injunctive relief, Art. 3663 requires no showing of irreparable harm by plaintiff. David v. Dixie Rice Agricultural Corporation, 379 So.2d 62 (La.App. 3rd Cir. 1979); Patin v. Richard, 357 So.2d 1285 (La.App. 3rd Cir. 1978).
Possession is the sine qua non for a party relying on Art. 3663. Babington Children Trusts v. Eimer, 285 So.2d 792 (La.1973). The possession must be for one year prior to the disturbance and suit must be brought within one year of the disturbance. Parkway Development Corporation v. City of Shreveport, 330 So.2d 646 (La. App. 2nd Cir. 1976), affirmed 342 So.2d 151 (La.1977); Ward v. Standard Materials Incorporated, 293 So.2d 885 (La.App. 1st Cir. 1974).
Article 3663 as worded allows a plaintiff to prove ownership as well as possession. Such proof does not constitute an improper cumulation of possessory and petitory actions since the action is for an injunction. Manson Realty Company v. Plaisance, 196 So.2d 555 (La.App. 4th Cir. 1967), application denied 250 La. 898, 199 So.2d 915 (1967). Furthermore, a record owner has a lighter burden of proving possession than does a mere trespasser since the owner may rely on the doctrine of constructive possession in which possession of part is possession of the whole whereas the trespasser must corporeally possess within boundaries. LSA-C.C. Arts. 3437, 3498, 3499; Ward v. Standard Materials Incorporated, supra; Manson Realty Company v. Plaisance, supra; Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). See also Johnson v. LaBokay Corporation, 326 So.2d 589 (La. App. 3rd Cir. 1976).
The act of sale by Leonard A. Andrus and Frank W. Grant to Joseph de Fuentes Harrison, dated August 28, 1929, together with the three judgments of possession introduced by plaintiffs (P 2, 3, 4), clearly establish plaintiffs as the record owners of the 22,000 acres at issue.
Plaintiffs and not defendants were found by the trial court to be in possession of certain contested lands, namely sections 23, 24, 25 and 26 of Township 19 South, Range 23 East. A careful scrutiny of the entire record convinces us that the trial court's finding was correct.
For many years, plaintiffs permitted trappers to work their property, including the disputed sections. As rent, plaintiffs collected a percentage of the trapper's sales. Trappers testifying as to their activities were Roland Duet, Harris Griffin and Mitchell Serigny.
*1330 Donald P. Adams, manager of the Harrison Land Company, traveled extensively over the lands in question to collect rents from hunting leases he had executed. Adams only saw a few "no trespassing" signs allegedly placed by defendants.
Roland Guidry, assistant manager for the Harrison property, testified that what signs defendants had placed were not in a line delineating a particular area. Furthermore, Guidry erected "no trespassing" signs for plaintiffs.
Plaintiffs introduced numerous exhibits including paid tax receipts, damage agreements, mineral leases, rights-of-way agreements and various correspondence dealing with the property. William H. Harrison, Jr., gave a detailed chronological history of plaintiffs' use of the property.
Defendants' case primarily consisted of a parade of witnesses reviewing their generally sporadic trapping, trawling, hunting and fishing activities in the area. In addition, they testified to the erection of camps, duck blinds and no trespassing signs. Several judgments of possession from successions and a few business documents also were introduced.
What confronted the trial court were two opposing groups of witnesses and masses of testimony. Each side sought to demonstrate its own extensive activity in the contested areas and a lack of activity by the opponents. Each sought to establish the presence of no trespassing signs belonging to its own party and a dearth of signs belonging to the opponents. Each sought to demonstrate possession via business activity.
The trial judge saw all the witnesses and examined the evidence. He concluded that defendants were more trespassers than possessors and that defendants' acts amounted to disturbances and not evictions. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975). The record, taken as a whole, supports his factual determinations and will not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (1978).
Appellants urge that plaintiffs should have been forced to prove title good against the world. This is incorrect since title was not at issue. In fact, appellants may yet bring a petitory action.
Defendants' judgments of possession cannot possibly be construed as conveying just title so as to allow defendants to possess constructively. Every defendant testifying admitted to past knowledge about the property dispute. Some witnesses knew of the dispute for forty years. Furthermore, none of the defendants could honestly believe their judgments of possession transferred ownership from the true owners because no instrument or judgment conveyed ownership to the ancestors whose successions fell to them. Lastly, none of the defendants could believe, in the face of the evidence and Harrison v. Alombro, supra, that their ancestors were owners by acquisitive prescription.
The Alombro Cemetery was properly seen by the trial court for what it is-a small plot occasionally used by defendants in the past but pretty much abandoned.
For the foregoing reasons, the trial court judgment is affirmed. All costs, both trial and appellate, are to be paid by defendants-appellants.
AFFIRMED.
NOTES
[1] Round one consisted of an action to remove clouds on title. In Harrison v. Alombro, 341 So.2d 1165 (La.App. 1st Cir. 1976), writ denied 343 So.2d 1063 (La.1977), several instruments of defendants found to constitute clouds on plaintiffs' title were declared null and void and of no effect. The record in Harrison v. Alombro covered some 3600 pages.
[2] One incredible exchange between both counsel and the court consumed forty-eight pages. (R 900-48).