422 So.2d 684 (1982)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff-Appellant,
v.
Allen Ray HOLMES, et ux., Defendants-Appellees.
No. 82-297.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Writ Denied January 10, 1983.
*685 Theus, Grisham, Davis & Leigh, Robert Lee Curry, III, Monroe, for plaintiff-appellant.
Ben C. Bennett, Jr., Marksville, for defendants-appellees.
Before FORET, CUTRER and STOKER, JJ.
FORET, Judge.
The major issue involved herein is to what extent, if any, may a landowner whose property is burdened with a St. Julien servitude in favor of an electric utility company construct buildings or other improvements beneath the company's power transmission lines.
Louisiana Power and Light Company (plaintiff) sought and obtained a temporary restraining order (TRO) directed to defendants, Allen and Jacqueline Holmes, prohibiting them, or anyone acting in concert with them, from constructing any buildings or improvements beneath plaintiff's electric lines or on its right-of-way. Plaintiff also sought preliminary and permanent injunctions to the same effect.
Defendants responded by filing a motion to dissolve the TRO, and an answer and reconventional demand denying plaintiff's right to injunctive relief and seeking to recover damages resulting from the alleged improper issuance of the TRO.
By agreement of the parties, the trial court's hearing was limited to those matters pertaining to the preliminary and permanent injunctions and the motion to dissolve the TRO.
Upon conclusion of the hearing, the trial court rendered judgment in favor of defendants and against plaintiff, declaring that the TRO had been wrongfully issued and awarding defendants $850 in attorney's fees[1]. The trial court further denied plaintiff's demand for a preliminary and permanent injunction.
Plaintiff appeals from the trial court's judgment and raises the following issues:
(1) Whether the trial court committed manifest error in finding that plaintiff had no servitude on defendants' land for the purpose of operating and maintaining its electric lines;
(2) Whether the trial court committed manifest error in finding that the construction of the proposed building by defendants would not render defendants' land unsuitable for the exercise of plaintiff's servitude;
(3) Whether plaintiff is entitled to injunctive relief prohibiting defendants from constructing a building beneath its electric lines; and
(4) Whether defendants are entitled to an award for attorney's fees incurred by them in filing their motion to disolve *686 the TRO, and if so, is an award of $850 for said attorney's fees excessive?

FACTS
On August 4, 1977, defendants purchased a vacant lot in Avoyelles Parish and constructed a home thereon. Plaintiff has electric lines crossing this property which have been in existence since at least 1950. On March 24, 1982, defendants commenced construction of a storeroom-garage (the building) on their property, beneath plaintiff's electric lines. One of plaintiff's employees noticed the construction activity taking place shortly thereafter and immediately reported this to his supervisor. Plaintiff requested that defendants cease construction of the building because of the alleged hazards involved in doing so, and offered to relocate its lines, if defendants would bear the cost of doing so. Defendants refused to bear these costs and informed plaintiff that they would proceed with the construction of the building. It was after these informal negotiations that plaintiff sought injunctive relief.

PLAINTIFF'S ALLEGED SERVITUDE
Plaintiff admits that it has been unable to locate any written and/or recorded instrument whereby it acquired a servitude over defendants' property. However, it contends that it has acquired such a servitude, as a matter of law, by operation of the St. Julien Doctrine. It argues that the trial court committed manifest error in finding that it had failed to prove that it had acquired a servitude in this manner.
The St. Julien Doctrine was first set forth in St. Julien v. Morgan Louisiana and Texas Railroad Company, 35 La.Ann. 924 (La.1883). Under this doctrine, a public or quasi-public corporation having expropriatory powers can acquire a servitude over the land of another where the landowner consents or acquiesces in the construction of facilities for a public purpose. The landowner is precluded from reclaiming his property and is limited to an action for compensation for the value of the property taken and damages, both determined as of the date of the taking. Rogers v. Louisiana Power & Light Co., Inc., 391 So.2d 30 (La. App. 3 Cir.1980); Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3 Cir.1966), writ denied, 250 La. 256, 195 So.2d 143 (La.1967); A.K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District, 117 So.2d 60 (La.1960).
As Judge Culpepper of this Court noted in Rogers v. Louisiana Power & Light Co., Inc., supra, at page 33:
"In Lake, Inc. v. LP&L, 330 So.2d 914 (La.1976), our Supreme Court, disenchanted with this extra-codal establishment of predial servitudes, overruled the St. Julien doctrine insofar as it applied to the acquisition of discontinuous servitudes. As in the present case, the Lake decision involved an electric transmission power line which, the Court stated, is a discontinuous apparent servitude. See Nash v. Whitten, 326 So.2d 856 (La.1976).
The district court, in its written opinion, held the St. Julien doctrine inapplicable to the facts of this case in light of the Lake decision. However, in Lake the Supreme Court expressly stated that its ruling was to be applied prospectively only, affecting conduct occurring after the finality of the Lake judgment. Here the transmission line was constructed in the early 1950s. Thus, the present case is clearly unaffected by the Lake decision. Plaintiffs' claim must be decided under St. Julien." (Emphasis ours.)
In the action sub judice, as in Rogers, the claims of the parties must be decided under St. Julien as the electric lines were constructed no later than 1950.
The trial court made three findings in reaching its conclusion that plaintiff had failed to prove that it had acquired a servitude over defendants' land. These findings are:
".... first of all, plaintiff admits that it has no written easement or written permission from any owner of the subject property to cross the property in question with its power line. Secondly, plaintiff *687 has not proved that it has ever obtained the consent, written or verbal, of any particular owner of the property in question to cross the property with its power line. Thirdly, plaintiff has not proved today that it has acquired a right of way across the property in question under Louisiana law regarding good faith ten year prescription or bad faith thirty year prescription."
It appears that the trial court either failed to apply the St. Julien Doctrine, or did so erroneously. There is no doubt that plaintiff has expropriatory powers. See LSA-R.S. 19:2(7). There is also no doubt that the electric lines, constructed by plaintiff across defendants' land, are used for a public purpose. Thus, all that plaintiff had to prove to show the existence of a servitude across defendants' land was that the owner of the land, at the time the electric lines were constructed, either consented to the construction or acquiesced in it. If the landowner at that time did so, then subsequent owners took the property subject to the servitude, even if it was unrecorded. See discussion on this point in Rogers v. Louisiana Power & Light Company, Inc., supra; Webster Sand, Gravel & Construction Co. v. Vicksburg, S. & P. Railway Co., 129 La. 1096, 57 So. 529 (1912); Perret v. Louisiana Southern Railway Co., 118 So.2d 510 (La.App.Orl.Cir.1960).
Alton Calhoun, plaintiff's Division Land Superintendent, testified that the Marksville area (where the lines in question are located) has been in his division since 1977. He stated that his office has never received any complaints regarding the location of the electric lines. Kenneth Laborde, a utility man employed by plaintiff, corroborated Calhoun's testimony. The evidence is uncontradicted that the electric lines have been in their present position since 1950, if not earlier.
We find that plaintiff has proven, by a preponderance of the evidence, that a previous owner of defendants' land did at least acquiesce in the construction of the electric lines across it. We note that plaintiff attached the affidavit of one Rueben C. Olson to its motion for a new trial filed in the trial court. This affidavit is part of the record before us. In it, Olson stated that he had owned the land in question from 1947 until 1975, and that in or about the year 1950, he consented to the construction of the electric lines so that Carleton Ford, one of the defendants' grandparents, could obtain electricity. The trial court's finding, that plaintiff failed to prove that it had acquired a servitude over defendants' land for the operation and maintenance of its electric lines, is clearly wrong.

EXTENT OF THE SERVITUDE
Plaintiff contends that the construction of the building beneath its electric lines will interfere with its use of the servitude. Further, such construction will create certain hazards presenting a danger to plaintiff's electric lines, defendants' building, and to persons who may come into contact with the line while that building is being constructed or who may climb on top of it once construction is completed. Plaintiff argues that the construction of the building will, as a matter of law as well as of fact, constitute interference with and will diminish the rights to which it is entitled by virtue of its servitude.
Defendants, on the other hand, contend that plaintiff has acquired a legal servitude on their land and nothing more. They argue that the extent of plaintiff's servitude is limited to the air space actually used, and that their only duty is not to deprive plaintiff of access to its electric lines. It is their position that their building, when completed, will not interfere with plaintiff's use of its servitude.
It is incorrect to classify plaintiff's servitude as a legal servitude. A legal servitude is a predial servitude, and constitutes a limitation on ownership established by law for the benefit of the general public or for the benefit of particular persons. See LSA-C.C. Article 659. Legal servitudes are charges on an estate, established by law, in favor of another estate. Here, the servitude on defendants' land has been established *688 by law in favor of a juridical person, i.e., plaintiff. Thus, it is classified as a limited personal servitude, rather than a legal servitude, and confers in favor of plaintiff a specified use of an estate less than full enjoyment. See LSA-C.C. Article 639; Exposé des Motifs, Title III of Book II of the Louisiana Civil Code.[2]
These servitudes are governed by the provisions of LSA-C.C. Articles 639-645. LSA-C.C. Article 642 provides:
"Art. 642. Extent of the servitude

A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title.

(Acts 1976, No. 103, § 1, eff. Jan. 1, 1977.)" (Emphasis ours.)
LSA-C.C. Article 645 provides:
"Art. 645. Regulation of the servitude
A right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude.
(Acts 1976, No. 103, § 1, eff. Jan. 1, 1977.)"
LSA-C.C. Article 651 provides:
"Art. 651. Obligations of the owner of the servient estate
The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate.

(Acts 1977, No. 514, § 1, eff. Jan. 1, 1978.)" (Emphasis ours.)
In connection with natural and legal servitudes, the law implies that the owner of the servient estate is charged with the duty to keep his estate fit for the purposes of the servitude. See Wild v. LeBlanc, 191 So.2d 146 (La.App. 3 Cir.1966); Brown v. Blankenship, 28 So.2d 496 (La.App. 2 Cir.1946), writ denied (La.1947); Comment to LSA-C.C. Article 651.
We find that defendants are charged with the duty to keep their estate in suitable condition for the exercise of plaintiff's servitude. Our finding is based on the provisions of LSA-C.C. Article 642 and, by analogy, LSA-C.C. Article 651 and the above mentioned jurisprudence. Thus, the issue is whether the construction of the building by defendants would constitute a violation of their duty to keep their property fit for the purposes of plaintiff's servitude.
The evidence shows that the electric lines crossing defendants' property are distribution lines carrying approximately 8,000 volts of electricity. Dudley J. Bertrand, plaintiff's Division Engineer for the Northern Division, testified that, based on the specifications for the building as testified to by Allen Holmes and the height of the electric lines over that portion of defendants' land where the building is to be constructed, there would be approximately nine feet of clearance between the roof of the building and the phase conductor, and six feet of clearance between the roof and the neutral conductor. Bertrand testified that, if defendants' building were to burn, it could cause the wires to melt, which in turn would disrupt service to other customers served by the electric lines. He further stated that the presence of the building could prevent automatic safety devices from functioning properly, if the wires broke and fell across the building, allowing a wire to remain energized in such a position *689 that persons may come into contact with it or that it might cause fire. He did admit that the construction of this one building might not interfere with plaintiff's ability to maintain its lines. However, the presence of many buildings under these distribution lines could definitely interfere with plaintiff's ability to do so.
Clifford Lafleur, a Land and Right-of-Way Manager for CLECO, testified regarding the hazards of constructing a building under an electric line. He stated that all utility companies have become very strict in refusing to allow the construction of buildings beneath their lines. He stated that the greatest danger in allowing such a practice is that people climbing on top of these buildings have a tendency to come into contact with the electric lines, causing them to suffer either serious bodily injury or death. He reiterated Bertrand's testimony to the effect that a structure burning beneath electric lines can cause serious disruptions in service to other customers served by that line. He was of the definite opinion that buildings beneath an electric line present an obstacle to the maintenance of that line.
We find that defendants' construction of this building will constitute a violation of their duty to maintain their land in such a manner that it is suitable for purposes of plaintiff's servitude. The trial court's finding, that plaintiff failed to prove that the construction of the building would create any hazard or would constitute an obstacle to the maintenance of the electric lines, is clearly wrong.

INJUNCTIVE RELIEF
The trial court denied plaintiff's request for injunctive relief to protect its possession of the servitude stating that:
"Plaintiff has completely failed to prove any irreparable injury, loss or damage will result from the construction of the proposed garage by defendants herein. Therefore, even if plaintiff had some type of right-of-way or easement which it has not this morning proved, across the property of defendants, plaintiff has not complied with the requirements of law relative to the issuance of an injunction in this case."
Plaintiff contends that the evidence does show that it will suffer irreparable injury, loss or damage, if it is not granted injunctive relief. However, plaintiff also contends that, even if the record fails to show the existence of irreparable injury, loss or damage, it is still entitled to injunctive relief under the provisions of LSA-C.C.P. Articles 3601 and 3663.
LSA-C.C.P. Article 3601 provides, in pertinent part:
"Art. 3601. Injunction, grounds for Issuance; preliminary injunction; temporary restraining order
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law;..." (Emphasis ours.)
LSA-C.C.P. Article 3663 provides:
"Art. 3663. Sequestration; injunctive relief
Sequestration of immovable property of or a real right therein involved in a possessory or petitory action during the pendency thereof is available under the applicable provisions of Chapter 1 of Title I of Book VII.
Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.

Amended by Acts 1981, No. 256, § 1." (Emphasis ours.)
LSA-C.C.P. Article 3663 provides for injunctive relief in two separate cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers *690 and other disturbers, and which is neither a possessory nor a petitory action. See Official Revision Comments to LSA-C.C.P. Articles 3663; Ryan v. Pekinto, 387 So.2d 1325 (La.App. 1 Cir.1980), writ denied, 394 So.2d 615 (La.1980).
Plaintiff contends that its servitude constitutes a real right and that it is entitled to injunctive relief to protect its possession thereof. Plaintiff claims the enjoyment of its real right in defendants' land, and that it has had possession of this real right for more than a year prior to the time that its possession was disturbed by defendants' actions in attempting to construct their building. Plaintiff argues that it is entitled to injunctive relief to protect its possession of its real right under the provisions of LSA-C.C.P. Article 3663(2), without making a showing that it will suffer irreparable injury, loss or damage.
Before plaintiff can obtain an injunction under LSA-C.C.P. Article 3663(2), it must have been in possession of the immovable or real right for a year before the disturbance. See Louisiana Irrigation and Mill Co. v. Pousson, 265 So.2d 756 (La.1972).
We have already found that the real right (the servitude) claimed by plaintiff does, indeed, exist in its favor. The evidence clearly shows that plaintiff had possession of this real right for more than a year prior to defendants' disturbance of that possession, and that it brought this action within a year of said disturbance. It is our opinion that, under these facts and circumstances, plaintiff is entitled to injunctive relief under the provisions of LSA-C.C.P. Article 3663(2), without a showing of irreparable injury. See Patin v. Richard, 357 So.2d 1285 (La.App. 3 Cir.1978). Unlike most actions for injunctive relief, an action brought under the provisions of LSA-C.C.P. Article 3663 requires no showing of irreparable harm by plaintiff. Ryan v. Pekinto, supra; David v. Dixie Rice Agricultural Corporation, 379 So.2d 62 (La.App. 3 Cir. 1979), writ denied, 382 So.2d 166 (La.1980); Patin v. Richard, supra. The trial court's finding, that plaintiff is not entitled to injunctive relief, is clearly wrong. We will remand this case to the trial court with instructions that it order the issuance of a permanent injunction in the form set forth in our decree.

ATTORNEY'S FEES
Plaintiff contends that the award of $850 by the trial court to defendants for attorney's fees incurred by them in filing their motion to dissolve the TRO is erroneous, and that, even if proper, the award is excessive. We find that the issues raised by plaintiff on the basis of this contention are moot since we have found that it was entitled to injunctive relief.

DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of plaintiff and against defendants, remanding this case to the trial court with instructions that it order the issuance of a permanent injunction, enjoining and restraining defendants, their agents, servants and employees, successors or assigns, from interfering with plaintiff's servitude by placing buildings or other improvements beneath its electric lines which would render defendants' land unsuitable for the exercise of its servitude. Judgment is further rendered in favor of plaintiff and against defendants, dismissing defendants' reconventional demand.
All costs of this appeal, and in the trial court, are assessed against defendants-appellees.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Also, by agreement of the parties, the trial court's judgment specifically reserves defendants' rights to proceed further on their reconventional demand seeking to recover damages resulting from the alleged wrongful issuance of the TRO. Because of our decision herein, defendants' reconventional demand will be dismissed.
[2] It is further explained in the Expose' des Motifs that: "Rights of use servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another person. See Yiannopoulos, Personal Servitudes § 123 (1968). They constitute an intermediate category between personal and predial servitudes. Like usufruct, use, and habitation, they are charges on property in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another person and are confined to certain advantages of use or enjoyment."