391 So.2d 1367 (1980)
George S. GUION, Jr. et al.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 11444.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
Rehearing Denied January 19, 1981.
*1368 William W. Irwin, Jr. and Jesse S. Guillot, New Orleans, for defendants-appellants.
Gary T. Breedlove, Francipane, Regan & St. Peé, Metairie, for plaintiff-appellee.
Before BOUTALL, SCHOTT and CHEHARDY, JJ.
SCHOTT, Judge.
This is an action for compensation for property taken from plaintiff by defendant, the State Department of Transportation and Development, for the construction of Interstate Highway 10 in Jefferson Parish. From a judgment in favor of plaintiff for $5,394 land value plus $2,000 in attorney fees and $1,000 of appraiser's fees the Department has appealed. The issues raised by the Department are 1) the claim prescribed pursuant to LSA R.S. 13:5111; 2) the land taken from plaintiff resulted from a shortage of property in Kenner Project Subdivision where the property is located and the shortage of property should be prorated among the Department and the other owners of property in the subdivision; and 3) plaintiff failed to carry his burden of proof with respect to the amount of land taken and the awards for land value and attorney and appraisal fees.
In January, 1963, plaintiff acquired lots 40, 41 and 42 of Square 173, Sec. 8, Kenner Project in Jefferson Parish, measuring 20 × 120 feet each for a total frontage on Sharon Street of 60 feet. On April 16, 1968, the Department purchased from plaintiff five feet of frontage for inclusion in the right-of-way of Interstate 10. After plaintiff's wife died in April, 1975, plaintiff visited the property with an appraiser in connection with his wife's succession and became suspicious that the highway was encroaching on his property. A survey made on October 13, 1976, demonstrated that the fence along the highway was 26.35 feet beyond the five feet the Department purchased from plaintiff.
R.S. 13:5111 provides:
"...... Actions for compensation for property taken by the state, or parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking."
Although the right-of-way fence was constructed on plaintiff's property on February 16, 1971, and this suit was not filed until March 8, 1978, plaintiff's property was located in an undeveloped and vacant area and plaintiff had no reason to suspect that the Department had built beyond the property it acquired from him until after April, 1975, when plaintiff's wife died and her succession was opened. Thus, the circumstances of this case are identical to those prevailing in Powell v. Department of Highways, 383 So.2d 425 (La.App. 4th Cir. 1980), writs refused Sept. 12, 1980, in which we held that plaintiff's claim under R.S. 13:5111 was not prescribed.
We turn next to the Department's contention that the shortage of property in Kenner Project Subdivision was the cause of the highway's being constructed on 26.35 feet of plaintiff's land in addition to the 5 *1369 feet the Department acquired, and that the shortage of land should be prorated among all of the property owners in the subdivision rather than for the Department to bear the entire loss. We addressed this issue in the Powell case and in the earlier case of Chenevert v. Louisiana State Department of Highways, 345 So.2d 960 (La.App. 4th Cir. 1977). However, the Department has now supplemented its argument on the issue with a motion to remand the case to a trial court for the specific purpose of prorating the shortage among the land owners. Because of the added emphasis the Department now places on this argument and because the procedural device now being employed by the Department in order to accomplish proration was not present in the previous cases, it is now appropriate to confront the issue with more particularity than we did in the previous cases and decide it with specificity.
The record shows that an error occurred in 1927 when Kenner Project was surveyed and subdivided by S. E. Calongne. Section 8 of the Subdivision was bounded on the south by Canal 14 and on the north by Canal 13. The plan provided for Canal 13 to be in the middle of Ashland Avenue, a divided street running east-west with the south side of Ashland measuring 45 feet wide. The distance between the two canals was in excess of 2,000 feet. Square 173 where the subject property is located along with Squares 174 through 183 were all bounded on the north by the south side of Ashland Avenue, with each of these squares measuring in excess of 1,000 feet from the north on Ashland to Luverne Avenue on the south. They were divided generally into lots measuring 20 feet front from north to south by 120 feet deep. The same general plan of subdivision was carried out for Squares 184 through 192, bounded on the north by Luverne Avenue, and on the south by Frankfort Avenue. To the south of these squares, Squares 193 through 201 are bounded on the north by Frankfort and on the south by Salisbury Avenue, a street divided by Canal 14. The problem with Calongne's survey was that there was not sufficient number of feet between the two canals to accommodate the number of lots and streets which Calongne called for on his survey, with the result that the side of Ashland Avenue on the south of Canal 13 was non-existent so that the northern boundary of Squares 173 through 183 was within two feet of the south side of Canal 13.
Many years before Interstate 10 was laid out on paper by Palmer & Baker, Engineers for the Department, the same engineers had laid out Veterans Memorial Highway which is parallel to and south of Interstate 10 in the area which is under discussion. Veterans Highway cut across the south ends of Squares 173 through 183, so that the subject square and the others were deprived of about 140 feet of north-south frontage with the construction of that highway. According to the Department's head land surveyor, James R. Wheat, the shortage in the property became apparent to Palmer & Baker when Veterans Highway was laid out but no action was taken to address or correct the problem. When the right-of-way for Interstate 10 was laid out the center line of the highway was established 150 feet from the northern boundary of the subdivision but Palmer & Baker used as that northern boundary the south side of Ashland Avenue, which was in fact non-existent, instead of using the true boundary which was the south side of Canal 13. As a result the south side of the Interstate right-of-way encroached on the northern ends of Squares 173 through 183 to the extent that the south side of Ashland Avenue should have accommodated the highway right-of-way.
The Department takes the position that the shortage should be prorated among its own property, measuring 300 feet wide, along with all of the lots in the subdivision north of the right-of-way of Veterans Highway. In other words, the proration for the shortage of the entire Kenner Project Subdivision should be imposed upon itself and only those who own land in Squares 173 through 183. In his testimony, Mr. Wheat also proposed to limit proration to unimproved properties in the area such as plaintiff's.
*1370 In disposing of this proposition in the Chenevert case we said the following:
"The state has sought to excuse itself from imposing this unconscionable burden upon Chenevert by asserting that Chenevert should have somehow caused a proration to be made of the survey error by prorating the error amongst all of the lots in the subdivision, and (recognizing the ridiculousness of that argument) by alternately alleging that proration should be made amongst those undeveloped lots in the last section of the subdivision. We cannot conceive why this should be Chenevert's burden. The State hired the engineering firm of Palmer & Baker, Inc. to make the surveys in this area in the years 1957 and 1958 for the purpose of locating the proposed right of way, in order to determine which property was needed for highway purposes. The surveyor was aware of the survey error at that time and yet chose to ignore the situation, not even notifying the Department of Highways land acquisition section that there was a problem. If there is any fault to arise for lack of provoking a proration of the survey error amongst the property owners, it is upon the Highway Department surveyor and not Chenevert."
Now the Department seizes on the very first sentence quoted above to justify its motion to remand the case to the district court. It contends that it has assumed the burden by setting into motion the following provisions of R.S. 33:5054:
"Whenever land divided into town lots and sold in conformity with a plan, is not of the same extent as that mentioned in the plan, and the difference is more than one thousandth part, the surveyor, commissioned for the parish where said land is situated, shall apportion, in conformity with the civil code, the surplus or deficit of the land, and make a plan pointing out, according to the apportionment, the correct dimensions of each square and the breadth of each street. The plan shall be deposited by the surveyor of the parish in the office of parish recorder. Public notices shall be given by the surveyor in a newspaper published in the parish designated as the official journal or in an adjoining parish if there is none published in the parish, during thirty days, directing all persons interested to present their opposition to the plan deposited as aforesaid with the parish recorder, which oppositions shall be referred to and decided by the district court. The plan, when not opposed within the delay aforesaid, or when modified in the opposition filed, shall be registered by the recorder in his office, and shall be authentic evidence of the description and dimensions of the property."
The Department argues that it is entitled to the remand in order to have the statute implemented. In support of its motion it has prepared a plan showing an apportionment of the shortage among hundreds of lots between Interstate 10 and Veterans Highway in Section 8 as well as Section 6 of Kenner Project. The Department alleges that it has already complied with this statute and the shortage has been prorated on a map revised in July, 1980. Therefore, plaintiff's loss is limited to 19 inches of frontage on Sharon Street with the balance of the property he claims to have lost to the Highway now added to his property from his neighbors. This might be a convenient solution for the Department but it surely leaves plaintiff with the same "unconscionable burden" we spoke about in Chenevert.
We cannot help but characterize the Department's proposed solution as an absurdity. As we pointed out in Powell, the case now under consideration is between the Department and one individual land owner. The extra property fenced in by the Department was plaintiff's and he alone is entitled to compensation. Even if the supposed proration were legally supportable it occurred after this case was tried and long after plaintiff acquired the right to be compensated for his land.
Without deciding the validity vel non of the proration which the Department claims was accomplished we must observe that the statute contemplates the situation where all of the lots in a subdivision would have the *1371 shortage apportioned among them. It does not authorize the shortage be apportioned only among lots which conveniently lend themselves to apportionment. Pretermitting all other questions, the proration of Section 8 of Kenner Project would require that everything between Canals 13 and 14 be included-including Veterans Highway, Interstate 10 and other streets.
Finally, it seems that the Department's failure to take action leading toward proration over the many years which elapsed from the time it discovered the error when the Veterans Highway was laid out until the Interstate Highway was already constructed would have some bearing on its right to claim the benefit of such proration. In any event, we deal here only with the question of whose property was taken by the state without compensation and without expropriation. The answer is plaintiff's and no one elses. Any idea of prorating plaintiff's loss among others is purely fiction. Plaintiff alone is entitled to be compensated for the loss of his property. The Department's motion to remand is denied.
Turning next to the amount of compensation awarded plaintiff. The judgment is for $5,394 with legal interest from July 16, 1979, (the date of the trial) plus $2,000 "in attorney fees on the principal and interest." Plaintiff's appraiser testified that the value of the land taken and severance damage to the remainder amounted to $3,375. This was based on a stipulated value of fifty one cents per square foot. The trial judge accepted this figure and added interest at seven per cent per annum from February, 1971, when the fence was installed to the date of the trial to arrive at the $5,394.
As to the $2,000 award of attorney fees, plaintiff testified that his contract with his attorney was on a contingent fee basis whereby his attorney would be paid one-third of any recovery made by him. That being so, the award of the trial judge was in excess of what was agreed upon between attorney and client. Although there is no evidence in the record of the time spent by the attorney it is apparent to us that a fee of one-third of the amount of principal and interest is justified.
Finally, the Department complains about the award of $1,000 for the appraiser's fee. He testified that he had provided plaintiff with a written appraisal report for which he charged a fee of $800, and his fee for testifying in court was $200. We are not persuaded that this award constituted an abuse of the trial judge's discretion.
Accordingly, the judgment appealed from is affirmed but is amended and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, George S. Guion, Jr. and against defendant, State of Louisiana, Department of Transportation and Development, in the sum of $3,375.00, together with legal interest from February 16, 1971, until paid; plus one-third of said amounts as attorney fees and for all costs of these proceedings. Expert fees are set at $75 to Surveys, Inc. and $1,000.00 to Albert Eason and are taxed as costs to be paid by defendant.
AFFIRMED, AMENDED AND RECAST.