347 So.2d 266 (1977)
JOSEPH A. NEYREY, GENERAL CONTRACTOR, INC.
v.
LOUISIANA POWER & LIGHT COMPANY.
No. 8008.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1977.
Rehearing Denied June 30, 1977.
August J. La Nasa, New Orleans, for plaintiff-appellee.
Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, New Orleans, and J. Wayne Anderson, Metairie, for defendantappellant.
Before SAMUEL, REDMANN and LEMMON, JJ.
LEMMON, Judge.
Defendant has appealed from a judgment which awarded Joseph Neyrey, a building *267 contractor, the damages he incurred when defendant's refusal to move a utility pole and transmission line located on his property caused a delay in performing a construction contract.
In 1967 Neyrey purchased some acreage on Lake Pontchartrain and eventually subdivided the property into lots, including Lot 15 which is involved in this litigation. A couple of years later he discovered a utility pole had been placed on Lot 15 and a transmission line was strung across the lot.
In December, 1972 Neyrey contracted to construct a residence on Lot 15. He requested that defendant move the structures, since the house could not be constructed with the transmission line in that location. Defendant agreed to do so, but only on the condition that Neyrey grant a permit to place the pole on another specified location on the lot.[1] Neyrey declined this offer, believing that even with the pole in the proposed relocation the transmission line would obstruct the view of the lake.
Further negotiations were fruitless, and the line remained in the same location. Because building costs were rising rapidly, and because the purchaser's financing commitment was for a limited time, Neyrey commenced construction in May, 1973 in order to bring the matter to a head. By early June the slab had been poured and the lower floor had been framed. Since further construction presented danger of interruption of electric service and of possible injury to workers, defendant filed a suit for injunction and obtained a temporary restraining order on June 12, 1973, halting construction pending a hearing. After trial of the rule for injunction the court on June 26, 1973, finding no factual basis for application of the doctrine of unopposed use and occupancy, dissolved the restraining order and ordered defendant to move its pole onto a utility servitude on the rear of the lot.[2] Neither party appealed from that judgment, and Neyrey proceeded to complete the house after the pole was moved on July 7, 1973.
On June 13, 1974 Neyrey filed the present suit for damages, a claim he had earlier asserted in the injunction suit. At trial Neyrey limited his claim to the amount of price increase for labor and materials between January and July 7, 1973, the period of the delay caused by defendant's failure to move the pole and line.
The issue as to whether or not defendant's pole and transmission line were lawfully on Neyrey's property was judicially decided in the injunction suit.[3] In the present suit, therefore, defendant must be regarded as a trespasser at all times.
Defendant's first argument is based on its exception of prescription, which was first filed in this court. However, a trespass committed by illegally erecting a structure on immovable property continues as long as the offending object remains on the premises, and the trespass is terminated only by the removal of the object wrongfully placed there. 1 Harper & James, The Law of Torts § 1.7 (1974); Prosser, The Law of Torts § 13, p. 74-75 (4th ed. 1971). The suit filed within one year of the pole's removal was therefore timely, under the circumstances of this case, as to all damages caused by the presence of the pole and transmission line during the entire time *268 that the continuing trespass existed and defendant refused to move the structures.
Furthermore, the demand for damages asserted in the injunction suit served as an interruption of prescription.
On the merits Neyrey testified that he was ready, willing and able to begin construction when the contract was signed in December, 1972, but that the house could not be constructed with the wires as then located. Since the trial judge apparently accepted this testimony, the key issue on damages is whether defendant's refusal to remove the pole was the principal cause of the construction delays. As to this issue, defendant contends that Neyrey could have begun construction earlier, even with the structures in that location.
Neyrey entered into the construction contract in the reasonable belief that defendant would move the pole and line immediately upon request. When defendant conditionally refused, Neyrey could not reasonably remove the pole and line himself, and his attempt to negotiate removal amicably was also reasonable. Since defendant believed at the time the pole and line were lawfully located, Neyrey decided that, instead of filing suit to compel removal and possibly engaging in extended litigation, he would commence construction to the point necessary to promote action. He obtained a building permit on March 15 and began actual construction within a few weeks.
Perhaps other courses of action would have been more prudent. And perhaps Neyrey did cause some minor time delays. But we cannot say the trial judge erred in concluding Neyrey's action or lack of action did not contribute substantially to the construction delays, but that the delays were caused principally by defendant's refusal without lawful basis to remove the pole and line. Neyrey is therefore entitled to any damages which he proved resulted from the delays.
Neyrey testified that an unprecedented cost increase occurred in the construction industry in the spring of 1973; that he had set the contract price based on verbal quotations of suppliers and subcontractors; and that while the labor and materials cost him considerably more than he had originally anticipated, he collected only the amount of the original contract price from the purchaser.
The amount of the price increase between the date of the contract and the date of removal of the pole was not seriously challenged at trial (except for one item which was apparently disallowed by the trial judge), and the award is adequately supported by Neyrey's testimony. The award of $550.00 in attorney's fees demanded by Neyrey for services in connection with the dissolution of the restraining order is also supported by the record. See C.C.P. art. 3608.
The judgment is affirmed.
AFFIRMED.
REDMANN, J., concurs and assigns reasons.
REDMANN, Judge, concurring.
The exception of prescription may be overruled on the theory that plaintiff interrupted prescription by asserting the same cause of action (the complained-of behavior of defendant; National Surety v. Standard Accident Ins. Co., 1965, 247 La. 905, 175 So.2d 263) by reconvention in defendant's injunction suit. "All prescriptions" as to that cause of action were thereby interrupted, R.S. 9:5801.[1]
*269 REDMANN, Judge, concurring in the denial of rehearing.
Plaintiff, in his answer as defendant in the injunction suit, had alleged that LP & L's pole "is prohibiting [plaintiff's] peaceful use and occupancy of [plaintiff's] property", and alleged "substantial, serious and continued damages" as a result. My characterization of plaintiff's thus asserting damage as a "reconvention" was an overstatement, although I remain of the opinion that this judicial declaration by plaintiff served as prescription-interrupting notice.
NOTES
[1] At this point defendant, contending that the pole and line had been in that location for many years without objection, took the position that the structures were lawfully located on the property under the doctrine of unopposed use and occupancy. That doctrine was later repudiated in Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976).
[2] The transmission line in question ran parallel to the lakeshore and did not serve the subdivision. The transmission line which served the subdivision ran perpendicular to the lakeshore on a servitude in the rear of the subdivided lots facing Carthage Street, which also ran perpendicular to the lakeshore.
[3] Defendant acted properly in obtaining a restraining order for the purpose of assuring continuation of service and protecting life and property. However, defendant's apparent purpose in seeking an injunction was not to secure time to remove the pole and wires which were illegally on the property, but to assert defendant's right to keep the pole in that location.
[1] The majority's alternate ratio appears doubtful. Cases like Craig v. Montelepre Realty Co., 1968, 252 La. 502, 211 So.2d 627, and D'Albora v. Tulane University, La.App. 4 Cir. 1973, 274 So.2d 825, writ denied, La., 278 So.2d 504 and 505, are not controlling because their defendants, unlike ours, were (1) doing what they had a legal right to do, such as demolition or piledriving, (2) on their own land (although their lawful activity entailed the obligation to repair any damage it caused). To require that a suit be brought against a neighbor on the first day he starts careful but damaging pile-driving would be unreasonable because that neighbor has the right to drive piles carefully in order to build on his own land, and the pile-driving will therefore continue and probably cause more damage, so that new suits (or supplemental petitions, in today's procedure) would be necessary. But our defendant was (1) doing what it had nolegal right to do, (2) on plaintiff's land rather than its own. A suit brought against our defendant on the first day it placed its pole and wires on plaintiff's land could finally have settled the matter because defendant had no right to continue to do what it was doing, and therefore no further lawsuit (or supplemental petitions, in today's procedure) would be necessary. But our defendant was (1) doing what it had no legal right to do, (2) on plaintiff's land rather than its own. A suit brought against our defendant on the first day it placed its pole and wires on plaintiff's land could finally have settled the matter because defendant had no right to continue to do what it was doing, and therefore no further lawsuit (or supplemental petition) would have been necessary.