Jean Mason SMITH, Elise M.S. Howard
and Marguerite M.S. Fleming

v.

**LOUISIANA POWER & LIGHT COMPA-
NY, INC.**, South Central Bell Telephone
Company, Louisiana Gas Service, Inc.,
Parish of Jefferson, City of Kenner,
Louisiana Department of Highways.

Civ. A. No. 79–1042.

United States District Court,
E.D. Louisiana.

Sept. 10, 1984.

Jarrell E. Godfrey, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiff.

J. Wayne Anderson, Monroe & Lemann, New Orleans, La., Ferdinand M. Lobb, Gretna, La., George W. Giacobbe, Kenner, La., for defendant.

MENTZ, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Background of the Case*

The original plaintiffs in Civil Action No. 79–1042, Jean Mason Smith, Elise M.S. Howard and Marguerite M.S. Fleming ("the Mason Smith heirs"), instituted on March 21, 1979, a civil rights action in federal court seeking damages from Louisiana Power and Light Company, Inc. ("LP & L"), Louisiana Gas Service, Inc. ("LGS"), South Central Bell Telephone Company, Parish of Jefferson, City of Kenner, and the Louisiana Department of Highways[1] for the alleged taking of certain property of which plaintiffs claim ownership or, in the alternative, seeking to oust those utility defendants from the property in question. Plaintiffs, Jean Mason Smith, Marguerite M.S. Fleming,[2] Harry T. Howard, III, and

---

1. These defendants all enjoy the right of expropriation as provided in Title 19 of the Louisiana Revised Statutes, plus the right of "inverse expropriation" under the St. Julien Doctrine.

2. Jean Mason Smith and Marguerite M.S. Fleming ("the Mason Smith heirs") are now deceased. The executor for the M.S. Fleming Succession has been substituted as plaintiff for M.S.

Jarrell E. Godfrey, Jr. (hereafter referred to collectively as "Smith"), are property owners in Jefferson Parish, Louisiana. The basic thrust of the suit is an alleged violation of civil rights under 42 U.S. Code § 1983, et seq., based upon the allegation that the various defendants, wantonly and without notice, or payment of compensation, under color of law, have taken or used portions of plaintiffs' property in Jefferson Parish, Louisiana. The petition also contains a conspiracy allegation as to the defendants under 42 U.S.C. § 1985(3). Plaintiffs are seeking a mandatory injunction ordering the removal of the works and structures placed on their lands. Alternatively, the plaintiffs are seeking compensation for the allegedly unlawful taking of such lands. Jurisdiction is alleged under 28 U.S. Code §§ 1331 and 1343, as well as pendant jurisdiction.

The complaint demands an injunction for the removal of various utilities and installations from said property, or a judgment for $8 million representing the fair market value of the property at a price of $20.00 per square foot. Plaintiffs also allege that two certain acts of donation, the first to the City of Kenner dated December 20, 1976, and the second to the Parish of Jefferson, dated December 21, 1976, were made under duress, and that these donations should be set aside. Punitive damages are also demanded.

The record further shows that on January 30, 1979, the various parcels involved in this lawsuit were conveyed to Messrs. Howard and Godfrey, so that the original claims would be owned by the Mason Smith heirs before that date, and Messrs. Howard and Godfrey would be entitled to any recovery on any claims after January 30, 1979.

The property involved in this suit consists of the remnants of two large tracts of land [3] on the east side of the Mississippi River in Jefferson Parish, Louisiana. Over the course of several decades the Mason Smith heirs sold out this property, by lot and by acreage, with the exception of the various small strips which are the subject of this suit. This litigation was triggered by the assessment procedure required in the 1974 Louisiana Constitution, Article 7, § 18, providing for a reevaluation of all property at fair market value.

Mr. Jean Mason Smith (now deceased) was born on April 21, 1893 and as of the time of trial, January 25, 1982, was 88 years old. Since the death of his father, William Mason Smith, in 1936, he had acted on behalf of all heirs until August, 1984, the time of his demise. He stated his last sale of property by lots or acreage was in 1962, and he did not have occasion to visit the property again until 1976.

The plaintiffs contend that in 1976 the Parish of Jefferson approached Mr. Mason Smith, with the proposal to donate to the Parish the property they owned in the Lafreniere/Elmwood tract, and allegedly told them that the Parish would assess the property for road and water improvements at an estimated $300,000 unless the donation was granted. At this time Mr. Mason Smith decided to go out and see the proper-

Fleming. Jean Mason Smith died in early August 1984.

**3.** The portions of the Elmwood and Lafreniere Plantations allegedly owned by the Mason Smith heirs are in Jefferson Parish, Louisiana, comprising portions of Sections 41, 42 and 43, Township 12 South-Range 10 East, South Eastern District of Louisiana, East of the Mississippi River. The Elmwood-Lafreniere tract was approximately one mile in width, lying on either side of the Elmwood Canal and extending in part from Airline Highway to Lake Pontchartrain. See Dusenbury plat of April 21, 1926, Exhibit P–30. On occasion this tract is referred to as the IC tract. See Transcript, at 105.

The Highway Park tract is in Jefferson Parish, Louisiana, comprising portions of Sections 37 and 42, Township 12 South, Range 9 East, and Sections 37 and 38, Township 12 South, Range 10 East, South Eastern District of Louisiana, East of the Mississippi River. The Highway Park tract comprises a large segment of the City of Kenner, Louisiana, extending from what is today West Metairie Avenue (Canal No. 5) to the Eastern boundary of the City of Kenner on the East. See Dusenbury plat subdividing Highway Park, a map in 3 sheets, dated December 5, 1925; Exhibit LP & L No.s 22, 23 and 24.

ty he was asked to donate. During his inspection he saw one area where a bridge had been built across Canal No. 2, where it joins Power Boulevard. The heirs further allege that they had no knowledge of any of the other takings until January of 1979, when the surveyor John Walker was employed to check the remaining strips. The taxes on this property for the period of 1963 through 1977 had been approximately $68.00 a year. The tax bill for 1978, however, reflected a substantial increase to $33,000. Mr. Mason Smith denied that he had ever been notified by any utility company or by the Parish or any other entity, that they wanted to expropriate his property, and that he had no reason to notice the electric power lines or gas lines that had been constructed on his property. Although there is some discrepancy between Mr. Smith's deposition and his live testimony, we believe he was truthful when he said that he did not have occasion to go back out to the property until the instance of 1976.

Mr. Mason Smith lived at 4605 Carondelet Street since 1920 until his demise, and had an office in the Richards Building in the Central Business District of New Orleans. He had one assistant, Mr. Abadie, whose general duties were keeping books, overseeing offices, and renting places. Thus, Mr. Mason Smith was easily available to anyone who may have desired to contact him relative to use or expropriation of his family property.

The Court will first consider the ownership of the various strips of land involved. There is no contention made that the William Mason Smith heirs were not the owners of this property. The Parish assessed the parcels, collected taxes, expropriated two of them in the 1981 state suit, [See *Parish of Jefferson v. Smith,* 407 So.2d 809 (La.App. 4th Cir.1981)] and both the City of Kenner in conjunction with the Parish accepted donations from the family. The utility companies believed that they could use the parcels under their franchises, assuming (erroneously) that the Mason Smiths had granted servitudes to the City and Parish, but at the same time negligently failing to have the titles examined.

One of the principal defenses is the doctrine of unopposed occupancy, based upon the old case of *St. Julien v. Morgan's Louisiana & Texas R.R. Co.,* 34 La.Ann. 924 (1883), which has now been statutorized. The doctrine, in essence, provides that utility companies may enter upon private property and construct works thereon without first invoking a pre-taking hearing or an expropriation proceeding. The private landowner is then relegated to a right to compensation. This right of compensation, however, prescribes in two years after the taking is accomplished. There is no provision for any notice of the taking to be given to the landowner; and, accordingly, the landowner's right to compensation can prescribe before he ever has notice of the fact that there has been a taking.

The St. Julien doctrine and case was reversed by the Supreme Court in *Lake, Inc. v. Louisiana Power & Light Co.,* 330 So.2d 914 (La.1976). However, the Louisiana legislature passed a statutory version of the St. Julien doctrine in 1976, by enacting Louisiana Revised Statutes Title 19, Section 14, which establishes a presumption that the owner has waived his right to receive just compensation prior to a taking by a political subdivision or utility company, where the action was done "with the consent or acquiescence of the owner of the property". This statute further provides a prescription period of two years, as to damage claims, or property claims, beginning when the property was actually occupied and used for the purposes of the expropriation.

While defendants may enjoy some precarious possessory rights, they could have acquired title in only four ways: (1) ten years' good faith possession under just title pursuant to Article 3473 of the Louisiana Civil Code; (2) thirty years' possession without title under Article 3486 of the Code, which is "possession by inches" under Article 3487; (3) the various legal expropriation procedures provided in Title 19 of Louisiana Revised Statutes, and particu-

larly (4) the St. Julien doctrine as enacted in R.S. 19:14, which must be based upon the "consent or acquiescence" of the owner, with some good faith effort to arrive at a price with the landowner, together with a showing of necessity. In the present case, the defendants have failed to acquire title in the strips of land in question: (1) neither ten years have passed nor is there just title; (2) thirty years have not transpired; (3) the expropriation procedures have not been followed, and (4) the St. Julien doctrine is not applicable since the requirements have not been met.

Moreover, in the case of *Sanders v. Plaquemines Cable TV, Inc.*, 407 So.2d 524, (La.App. 4th Cir.1981), the court stated:

> Assuming arguendo that cable TV proprietors have a right to expropriate servitudes they must strictly comply with the enabling statute. The defendant has failed to do so. It has not tried to secure such right by consent, contract or agreement upon just and reasonable terms with the owner of the property.

Thus R.S. 19:14 granting certain bodies and companies the right of "inverse expropriation" under the St. Julien doctrine must be construed together with R.S. 19:2 which provides for expropriation "where a price cannot be agreed upon with the owner." In the case at bar, the defendants never secured from the plaintiffs the right to use "Smith's" property nor did they even discuss a "use" price. In fact, the defendants never even contacted Smith to discuss this matter at all.

## OPINION

### 1.

Jean Mason Smith was a local businessman, and throughout the years has had a listed address and telephone number in New Orleans. He and his co-heirs have been assessed with, and have paid local taxes on the lands involved. As far as the St. Julien Statute is concerned, there was never any notification, negotiation, consent or acquiescence in any taking, with the exception of the bridge discovered by Mr. Mason Smith on his 1976 visit to the Jefferson Parish property. Even as to this, there was no compliance with the St. Julien Doctrine for failure to comply with R.S. 19 Section 2, nor has there been a showing of necessity.

### 2.

Title still remains in the Mason Smith Heirs, subject to an appropriate State action to recover possession.

### 3.

Such adverse possession as has been demonstrated here, under the totality of the circumstances, was not intentional nor the result of a conspiracy, but rather the result of negligence, or gross negligence, on the part of defendants, in failing to survey or abstract the parcels in question prior to entry. Until the Civil Engineer John Walker made a determination in 1979, it was unclear to the parties whether installations, utilities, bridges, etc. had been actually located on these parcels.

### 4.

This Court will follow *Parrott v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and hold that the taking by adverse possession in this case does not rise to the level of a constitutional tort. As stated by Justice Rehnquist, even though a taking of property has been made under "color of law", the inquiry "must focus on whether the respondent has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the state ... provides as a means of redress for property deprivations satisfy the requirements of procedural due process." In *Vial v. South Central Bell Telephone Co.*, 423 So.2d 1233 (La.App. 5th Cir.1983), the utility made certain installations on plaintiff's property beyond the existing 12-foot right-of-way. The Louisiana Fifth Circuit found that South Central Bell's action constituted a negligent trespass. The Court following *Neyrey v. La. Power & Light Co.*, 347

So.2d 266 (La.App. 4th Cir.1977), held that where the trespass is a continuing one, prescription does not begin to run until the offending object is removed. The Court further held that both proof of public necessity and consent, presumed or otherwise, must be established to invoke the St. Julien Doctrine. The St. Julien doctrine was found not to apply since both public necessity and consent were not present under the facts. In view of the fact that "no serious effort was made to define the legal perimeters of the work area," resulting in the constructions being inadvertently placed outside the servitude, the trespass was held to be negligent (not intentional) and damages were awarded. 423 So.2d at 1237. The trespass action, as well as the Louisiana petitory, possessory and slander of title actions provide adequate post-deprivation remedies, so that a pre-deprivation hearing was not required in this case.

5.

In two recent cases decided by the Fifth Circuit on August 16, 1984, *Augustine v. Sheriff,* 740 F.2d 322 and *Thibodeaux v. Bordelon,* 740 F.2d 329 the Court through Judge Wisdom considered the application of *Parrott v. Taylor.* In the present case, the acts performed were not "pursuant to established state procedure," nor is it contended that Louisiana's pre-deprivation procedures in Title 19 are inadequate. The acts herein complained of were "random and unauthorized," and plaintiffs' rights are amply protected by State post-deprivation procedures.

6.

We need not address the question of whether the St. Julien statute is constitutional or whether its provisions comply with the requirements of due process, as we have found that the defendants have not complied with the three-pronged requirements of the Statute; therefore, the St. Julien statute is not applicable in this case.

7.

The evidence here shows that no actual expropriation took place.

8.

Since the adverse possession in this case does not rise to the level of a constitutional tort and Louisiana provides the plaintiffs with adequate post-deprivation remedies, this action shall be dismissed without prejudice.

9.

Since there is no federal issue to be decided, this Court need not rule on the state issue of whether one-year or ten-year prescription applies to this type of action.

ORDER

IT IS ORDERED that this action be DISMISSED without prejudice with each party paying its own costs.