583 So.2d 503 (1991)
Elise Mason Smith HOWARD, et al.
v.
LOUISIANA POWER & LIGHT COMPANY, et al.
No. 90-CA-768.
Court of Appeal of Louisiana, Fifth Circuit.
June 5, 1991.
*505 Larry J. Radosta, Asst. Parish Atty., Gretna, for Parish of Jeffersondefendant/appellant.
Robert T. Garrity, Jr., Harahan, Jarrell E. Godfrey, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for plaintiffs and appellees, Elise Mason Smith Howard, et al.
Before BOWES and GRISBAUM, JJ., and ELORA C. FINK, J. Pro Tem.
BOWES, Judge.
Defendant, Parish of Jefferson, appeals a judgment by the trial court finding that it took properties, by placing constructions thereon, belonging to plaintiffs without benefit of expropriation or other legal recourse and awarding to plaintiffs $351,866.45, plus legal interest and attorney's fees of $153,810.62. We affirm.

FACTS AND BACKGROUND
On October 5, 1984, plaintiffs filed a petition for mandatory injunction and alternatively for compensatory and punitive damages against Louisiana Power and Light Company, Louisiana Gas Service Company, Parish of Jefferson, The City of Kenner and the Consolidated Sewerage District of the City of Kenner.[1] Trial in this matter was bifurcated; trial on the issue of liability only was held on February 18, 1987. The trial court rendered judgment in favor of the plaintiffs, finding that: "1. The plaintiffs own the subject property; 2. The plaintiffs never consented nor acquiesced in the taking of the property by the defendants; 3. The defendants did not acquire title to the subject property; [and] 4. Title to the subject property remains in the plaintiff's [sic]." On appeal, this court found the trial court's judgment insufficient because it did not describe the affected real estate with particularity. The case was remanded for further proceedings. Howard v. Louisiana Power & Light Company, Inc., 536 So.2d 847 (La.App. 5 Cir.1988).
A second trial was held on March 9, 1990 to identify, describe and determine the value of each parcel of land taken by Jefferson Parish and to assess damages and attorney fees, if any. On March 16,1990, the trial court rendered judgment in favor of plaintiffs and against the Parish of Jefferson in the amount of $351,866.45, together with legal interest from October 5, 1984 until paid and $153,810.62 in attorney's fees.[2]
The Parish of Jefferson has appealed both, the judgment of October 8, 1987 and the judgment of March 19, 1990, and presents five assignments of error for review:
1. The Lower Court erred in finding that the Plaintiffs-Appellees own any of the property in question because said property was statutorily dedicated to the public use.

*506 2. The Lower Court erred in not finding that the plaintiffs acquiesced to the use of the property in question by the Parish and in not applying the doctrine of unopposed use and occupancy to find that the Parish of Jefferson acquired valid servitudes on and across the property in question.
3. The Lower Court erred in overruling exceptions of no right of action, prescription and other such affirmative rights as plead by the Parish of Jefferson.
4. The Lower Court erred in awarding an amount to the plaintiffs-appellees for attorney fees or, in the alternative, assessing the entire amount to the Parish of Jefferson.
5. The Lower Court erred in awarding interest from date of judicial demand.

FACTS:
In the 1920's, William Mason Smith (ancestor of plaintiffs' herein) purchased two large adjoining tracts of land in Jefferson Parish running from approximately Airline Highway to Lake Pontchartrain. Both tracts were subject to a drainage servitude in favor of the Fourth Jefferson Drainage District and were intersected by five (5) drainage canals running parallel to Lake Pontchartrain.
The first of the tracts was purchased from the Illinois-Central Railroad (hereinafter the I-C Tract). In the sale to William M. Smith, the Illinois-Central Railroad retained ownership of the property over which the canals had been placed.
The second tract was acquired from the Highway Development Company (hereinafter Highway Park Tract). The sale included the property upon which the canals had been previously built, subject to the servitude granted by appellees' ancestors in title. In 1925, the Highway Park Tract was subdivided into squares and lots pursuant to a Plan of Subdivision prepared by A.T. Dusenbury. This plan was dated December 5, 1925 and was filed into the Conveyance Records of Jefferson Parish.
After World War II, the Mason Smith family, through Jean Mason Smith, began to sell parcels of the land in question. The Highway Park Tract was sold by squares and lots pursuant to the Dusenbury Plan, excluding land consisting of and adjacent to the canals. The I-C Tract was sold by acreage. The Mason Smith family retained ownership in strips of land adjacent to the canals on the property and also retained ownership of the canal bottoms in the Highway Park Tract.
All sales transactions by the Mason Smith family were completed prior to or in 1962. Jean Mason Smith did not visit the property except for a visit to one part of the property in 1977 and he was unaware of the constructions and utilities placed on his property.
Sometime after the majority of the sales by the Mason Smith family had been made, the defendants placed structures upon the strips of land which were retained by the Mason Smith family. With the exception of one pedestrian bridge, all of the structures placed by Jefferson Parish occurred prior to 1975.
From 1963 until 1977, property taxes on the strips of land retained by the Mason Smiths were assessed at approximately $68.00 a year. In 1978, however, Mr. Mason Smith received a tax bill of $33,000.00. A surveyor was employed to assess the Mason Smith property and, in January 1979, as a result of reviewing the survey findings, Mr. Smith discovered the "takings."
The Mason Smith family instituted suit in United States District Court in March of 1979. In September of 1984, the United States District Court dismissed the suit, without prejudice, for lack of jurisdiction. Appellees then filed the instant action in the 24th Judicial District Court.

ANALYSIS

Issue One:
Did the Recordation of the Dusenbury Plan effect a statutory dedication of the property in question?
The Highway Park Tract was divided into squares and lots prior to the sale to the Mason Smiths. A plan of subdivision *507 of Highway Park was prepared by A.T. Dusenbury, Consulting Engineer, was dated December 5, 1925, and was recorded in the Conveyance Records of Jefferson Parish. Appellants argue that the filing of this plan effected a dedication of the canal bottoms to the Parish of Jefferson and, therefore, the trial court erred in holding that appellees still owned the canal bottoms.
Acts 1896, No. 134, in effect at the time the Dusenbury Plan was prepared and filed, [which is basically the same as LSA-R.S. 33:5051 governing statutory dedicationGarrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980),[3] ] provided as follows:
"Section 1. Be it enacted by the General Assembly of the State of Louisiana; That whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be the duty of such owner or owners of such real estate, before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:
1. The section township and range in which such real estate lies or subdivision thereof according to government survey.
2. The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
3. The number of each lot or subdivision of a square and its dimensions in feet and inches.
4. The name of each street and alley its length and width in feet and inches.
5. The name or number of each square or plat dedicated to public use.
6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map.
7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use.
Sec. 2. Be it further enacted, etc., That any person or persons, agent or attorney in fact who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction before the District Court shall be fined not less than ten dollars nor more than five hundred for each offense.
Sec. 3. Be it further enacted, etc., That it shall be the duty of all clerks and exofficio recorders and notaries public in all the parishes of this State, the parish of Orleans excepted, to refuse to place on record any deeds of sale of property coming under the provisions of this act, until the provisions of this act shall have been complied with; and to report to the District Attorney all violations of this act."
Pursuant to Act No. 134 of 1896, the dedication of property is complete upon the filing of the plat. Furthermore, the public acquires not just a servitude, but, instead, statutory dedication vests full ownership in the municipality, parish or state. Garrett v. Pioneer Production Corp., supra; Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (La.1965).
In order to effect a statutory dedication, complete and detailed compliance with the statute is not required. It is sufficient if substantial compliance with the statute is proven. Garrett, supra; Morris v. Parish of Jefferson, 487 So.2d 647 (La. App. 5 Cir.1986). A statutory dedication therefore may exist even though there is no language in the plat formally dedicating lands to public use. Morris v. Parish of Jefferson, supra.
Nevertheless, the intention to dedicate must be clearly established. Banta *508 v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1 Cir.1967) writ den. 251 La. 46, 202 So.2d 657 (La.1967). If the fact of dedication is doubtful, the court must look to the surrounding circumstances to determine whether there was an intent to dedicate. Pioneer Production Corp. v. Seagraves, 340 So.2d 270 (La. 1976); Hailey v. Panno, 472 So.2d 97 (La. App. 5 Cir.1985). When a rational construction of the record negates an intent of a landowner to dedicate a particular piece of land, the fact that reference to the land appears on a map does not effect a statutory dedication. Hailey v. Panno, supra.
In the present case, the record reflects that the appellees purchased the Highway Park Tract, including the canal bottoms thereupon, subject to a conventional servitude of drainage granted by their ancestors in title to the Fourth Jefferson Drainage District. Furthermore, the canals were in place prior to the acquisition of the property by the appellees. This evidence, coupled with the failure of the Dusenbury Plan to contain a statement of dedication of the canal bottoms, negates an intention to dedicate the canal bottoms to the Parish of Jefferson. Compare Pioneer v. Seagraves, supra, wherein the Louisiana Supreme Court held that the depiction of a roadway on a plat, where the roadway was created pursuant to a pre-existing servitude, was not sufficient to constitute a statutory dedication, despite the inclusion on the plat of the dedication statement pursuant to LSA-R.S. 35:5051(7).
Accordingly, we hold that the filing of the Dusenbury Plan did not divest appellants of ownership of the canal bottoms in the Highway Park Tract.

Issue Two:
Does the doctrine of "unopposed use" operate to grant Jefferson Parish a valid servitude on and across the property in question?
Appellant alleges that the trial court erred in failing to find that plaintiffs had acquiesced in the building of the facilities by the Parish of Jefferson and that the Parish had acquired a servitude on plaintiffs' property by virtue of the doctrine of unopposed use and occupancy, more commonly known as the St. Julian Doctrine.
This court, in Vial v. South Central Bell Telephone, 423 So.2d 1233, 1236-7 (La.App. 5 Cir.1982) writ den. 432 So.2d 265 (La. 1983), examined the development of the St. Julian Doctrine:
The St. Julian Doctrine developed jurisprudentially as an adjunct to and deviation from Louisiana's expropriation laws. LSA-C.C. arts. 2626-2641. Dating back to St. Julian v. Morgan's Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883), the doctrine provided public or quasi-public corporations possessing the power of expropriation a method of acquiring servitudes or rights-of-way over the land of another without resort to expropriation proceedings. However, it was necessary that the landowner had knowledge of the construction and consented to it or acquiesced in it. Allowing the structures to remain, it granted the landowner damages only for their presence. Lake, Inc. v. Louisiana Power and Light Co., 318 So.2d 911, 912 (La. App. 4th Cir.1975); reversed 330 So.2d 914 (La.1976). The Louisiana Supreme Court in Lake, supra, overruled the doctrine prospectively as it related to acquisition of discontinuous apparent servitudes; however, in October of the same year, the legislature enacted the Doctrine in LSA-R.S. 19:14. Appellant urges and we agree that neither the Lake decision nor the legislative pronouncement are applicable here since the conduct in question began in January, 1976 and ended in July, 1976. Thus, if the facts dictate, the case herein is subject to the original jurisprudential requirements.
Implicit in the St. Julian Doctrine is proof that the taking of property is necessary for the general use. LSA-C.C. art. 2626. Explicitly, it requires a consent or acquiescence by the landowner to the taking of the property without expropriation proceedings. The landowner consents or is presumed to have consented to that which an expropriation suit would have compelled him to yield. Moore Planting Co. v. Morgan's Louisi ana *509 & Texas Railroad Co., 126 La. 840, 53 So. 22 (1910). [Emphasis supplied]
See also Cancienne v. Lafourche Parish Police Jury, 423 So.2d 662 (La.App. 1 Cir. 1982).
The record in this case establishes that all of the "takings" by appellant, with the exception of one foot bridge, occurred prior to 1975, and, therefore, prior to the decision in Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976) (which prospectively overruled the St. Julian case). Accordingly, as in the decision in Vial, supra, the case sub judice is subject to the original jurisprudential requirements of the St. Julian case and its progeny. See also Louisiana Power & Light Co. v. Holmes, 422 So.2d 684 (La.App. 3 Cir.1982).
There is no dispute that the appellant, the Parish of Jefferson, had expropriatory powers and that the taking of the property was necessary for public use. What is at issue in these proceedings is whether the plaintiffs, by their silence, consented to or acquiesced in the use of their property for public utilities. See Gumbel v. New Orleans Terminal Co., 186 La. 882, 898-899, 173 So. 518, 520-523 (1937); Louisiana Power and Light Co. v. Holmes, supra.
Appellants allege that, by their silence, Jean Mason Smith and his heirs acquiesced to the taking of their property for the construction of public facilities. The appellees contend that they never knew of, and, therefore, did not consent to, the taking.
Moreover, appellees allege that they did not discover the taking of their property until years after these takings were completed. The trial court found as a fact that plaintiffs never consented to nor acquiesced in the taking of the property by defendants. After reviewing the testimony and the evidence presented in this case, we find nothing in the record to contradict this and thus we find no manifest error in this fact-finding of the trial court and we, therefore, hold that the St. Julian Doctrine is inapplicable to this case.

Issue Three:
Are plaintiffs' claims prescribed?
Appellant first argues that the 2 year prescriptive period of R.S. 19:2.1(B) operates to bar plaintiffs' claims.
LSA-R.S. 19:2.1(B) provides:
"B. All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation."
However, LSA-R.S. 19:2.1(B) applies only to cases where there has been an "exropriation" of private property, and not to cases where there has been an "appopriation" as here. Jungeblut v. Parish of Jefferson, 485 So.2d 974 (La.App. 5 Cir.1986); Powell v. Department of Highways, 383 So.2d 425 (La.App. 4 Cir. 1980) writ refused 389 So.2d 1129 (La.1980). Accordingly, we hold that LSA-R.S. 19:2.1(B) is inapplicable to this case.
The Parish next argues that a two year prescriptive period is applicable pursuant to LSA-R.S. 19:14 (the codification of the St. Julian Doctrine, discussed supra) which provides in part:
"In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for *510 expropriation as provided for in Section 2.1 of this Title."
In Jungeblut, supra, it was noted that, like the St. Julian Doctrine, LSA-R.S. 19:14 requires a good faith taking and acquiescence or consent of the owner. Having found that the plaintiffs did not acquiesce nor consent to the taking, we now hold that LSA-R.S. 19:14 is inapplicable to this case.
However, the Parish also argues that the three year prescriptive period is applicable under LSA-R.S. 13:5111, which provides as follows:
"A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking. [Emphasis supplied]
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975."
The case law, reflected in the jurisprudence, has held that the three year prescriptive period referred to above begins to run from date of discovery of the taking. Jungeblut v. Parish of Jefferson, supra; Guion v. State Dept. of Transportation and Development, 391 So.2d 1367 (La.App. 4 Cir.1980) writ den. 397 So.2d 1361 (La. 1980).
The facts of this case show that the earliest plaintiffs could have become aware of the taking was in July of 1976. Testimony established that Jean Mason Smith actually discovered the takings in 1978 or 1979, after receiving an uncustomarily and exceedingly large tax bill. Suit was filed in federal court on March 21, 1979, within the three year prescriptive period of LSA-R.S. 13:5111.
Therefore, we hold that the trial court did not err in denying defendant's exception of prescription under any theory discussed above.

Issue Four: Attorneys Fees:
The Parish of Jefferson argues that there is no authorization for the award of attorney's fees in this case. However, LSA-R.S. 13:5111, cited supra (see emphasized portion), specifically authorizes an award for attorney fees in a case such as this, where a parish "takes" the property by a method other than expropriation.
Defendant also alleges that the trial court erred in failing to assess part of the award against the City of Kenner.
The trial court, in awarding attorney's fees of $153,810.62, stated that:
"This amount is reasonable after considering the amount of time expended by counsel for plaintiffs, in excess of one thousand four hundred and eighty (1,480) hours, the complexities of the issues involved, the result obtained, the amount involved and the extent and character of the labor performed."
In Pillow v. Board of Com'rs., 425 So.2d 1267, 1283 (La.App. 2 Cir.) writ den. 445 So.2d 1225 (La.1984), the court considered the reasonableness of attorney's fees awarded under LSA-R.S. 13:5111. The court noted that:
[... the amount of hours spent by counsel in connection with the litigation] is certainly one of the factors to be considered. Other factors we have considered in evaluating the reasonableness of this fee are the ultimate result obtained, the responsibility incurred, the *511 importance of the litigation, the amount involved, the extent and character of the labor performed, the legal knowledge, attainment and skill of the attorneys, the number of appearances made, the intricacies of facts and law involved, the diligence and skill of counsel, the court's own knowledge of the case and the ability of the party liable to pay. Guillory v. Guillory, 339 So.2d 529 (La.App. 4 Cir. 1976).
Furthermore, the trial court is vested with great discretion in making such awards and its judgment should not be disturbed, absent manifest error. Pillow v. Board of Com'rs., supra.
The other contention of Jefferson Parish in this regard is that the City of Kenner should have been cast for part of the attorney's fees because Kenner was also a defendant in this case. However, the City of Kenner was not a party in the trial which resulted in assessing damages and attorney fees. In addition, the Parish makes no showing that the fees charged by plaintiffs' attorneys were incurred in the prosecution of this suit against other defendants and not against the Parish. Finally, the Parish cites no authority for the proposition that attorneys fees must be apportioned among co-defendants who settle or are otherwise disposed of prior to final judgment in the case.
Accordingly, we find no merit to these arguments; and, in view of the great discretion granted to the trial judge in this connection, and his more than adequate reasoning in his written reasons for judgment quoted above (which follows the requisites laid down in the Pillow case, supra, for determining the amount of reasonable attorney fees) and, in accordance with the quoted jurisprudence, we find no error and, therefore, we are powerless to interfere with or reduce the amount of attorney fees awarded.

Issue Five:
Did the trial court err in awarding interest from date of judicial demand?
The Parish relies on LSA-R.S. 48:455, which at the time this suit was filed, provided that the judgment rendered in an expropriation case shall provide legal interest "as of the date title vests in plaintiff to the date of payment." However, defendant's argument ignores the fact that this case does not involve an expropriation, but rather a situation where property was appropriated without prior legal proceedings.
LSA-C.C.P. art. 1921 provides that "The court shall award interest in the judgment as prayed for or as provided by law." Pursuant to LSA-R.S. 13:4203, legal interest in actions ex delicto, such as this one, attaches automatically until the judgment is paid, even if not prayed for or not mentioned in the judgment. Lewis v. Macke Bldg. Services, Inc., 524 So.2d 16 (La.App. 5 Cir.1988) writ den. 532 So.2d 131 (La. 1988). We, therefore, can find no error in the trial court's award of interest from the date of judicial demand.

DECREE
For the above-discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.
NOTES
[1] This action was originally filed on March 21, 1979, in the United States District Court for the Eastern District of Louisiana seeking the same remedies. After a trial on the merits, the trial court made certain findings of fact and then rendered judgment dismissing the case without prejudice on the basis that it had no jurisdiction. Smith v. Louisiana Power & Light Co., Inc., 638 F.Supp. 361 (E.D.La.1984.)
[2] The claims against Louisiana Power & Light Co., Inc., Louisiana Gas Service Co., the City of Kenner and the Consolidated Sewerage District of the City of Kenner were disposed of prior to this appeal.
[3] Act No. 80 of 1922 also provided for the filing of a plat. It substantially reenacted parts of Acts 1896, No. 134, see Garrett, supra, but it did not provide for the dedication of streets. It appears that, from its language. Act 80 of 1922 did not repeal Act No. 134 of 1896.