JiSUSAN M. CHEHARDY, Judge, Pro Tern.
Plaintiff, St. Charles Parish School Board (School Board), appeals an adverse declaratory judgment holding a disputed roadway to be the property of the defendant, P & L Investment Corporation (P & L) and its co-liquidators, Richard W. “Warren” Landry, Angelo Puglise and Salvadore Puglise. The School Board contends that the trial court erred in finding that the roadway had not been dedicated to public use. For the following reasons, we affirm.
This dispute centers around a 50 foot wide roadway adjacent to Hahnville High School in St. Charles Parish. In the early 1970’s, P & L offered to sell the School Board a 45 acre tract of unimproved land in the parish on which to build Hahnville High School. The School Board wished to buy only 34 acres of the P & L property, and a 34 acre tract was carved from the middle of the P & L plot. P & L retained the remaining acreage, which included a section of land on the north side of the property abutting Louisiana *49 Highway 90, and another section on the south side of the property. In order to maintain access to its land south of the School Board’s site, P & L also retained a strip of property 50 feet in width and running along the entire western boundary of the School Board property. The strip extended in a mostly southerly direction to the P & L tract. The act of sale between P & L and the School Board was executed on December 28, 1972. A November 29, 1972, survey of the property by E.M. Collier, commissioned by the School Board, was filed with the act of sale[1].
On March 26, 1973, P & L entered into an exchange of property with the St. Charles Parish Police Jury (“Police Jury”) by which P & L received Second Street, a dedicated street which intersected with Highway 90 just east of the 50 foot roadway, and which was used as ¡^^construction access road during the building of the school. In return, the School Board received two lots which aligned with the 50 foot street and connected it to Highway 90. The two lots became the new Second Street, a dedicated street approximately 222 feet in length, running north to south from Highway 90 to join with P & L’s 50 foot strip.
The new Second Street was intended as an access road from Highway 90 to the school grounds, but did not extend all the way to the front of the school. The School Board and/or the parish therefore laid asphalt on a portion of the 50 foot strip belonging to P & L. A portion of the street beyond the asphalt was subsequently laid with concrete, and the School Board laid shells on another segment of the road south of that. A section of the 50 foot street south of the shell portion was left undeveloped. The entire roadway, including the Second Street segment, is commonly known as “Tiger Drive.”
It is not disputed that the Second Street portion of Tiger Drive is a public right-of-way. It is the developed portion of the road south of Second Street that is the subject of this dispute. From the mid-1970’s until the early 1990’s, the School Board used the disputed portion of Tiger Drive as an access road to and from school grounds and as a parking area for school functions with little protest from P & L. In the mid-1970’s the School Board erected a gate on the road at the point where Second Street met the 50 foot street. The gate was locked on occasion, depriving P & L of ready access to its property south of the school. The principal of Hahnville High School also, at various times, placed barricades on Tiger Drive in an effort to control or limit the flow of traffic on school grounds.
In 1983, P & L was dissolved and its assets liquidated. Shareholders Warren Landry, Angelo Puglise and Salvadore Puglise became co-liquidators, and each retained an undivided one-third interest in the 50 foot strip as well as the other P & L property adjacent to Hahnville High School. On October 11, 1990, P & L’s attorney notified the School Board by certified letter that it was not authorized to use the private portion of Tiger Drive, and that if it continued to do so P & L would institute injunctive proceedings. In a letter to the School Board’s attorney dated March 21, 1991, P & L advised that if an agreement was not reached on the purchase of the disputed property within ten days of receipt of that correspondence, P & L would proceed with plans to develop the land in the rear of Hahnville High School, and would in the process run a | <¡sewer and water line down the middle of the 50 foot strip.
The School Board filed a Petition for Declaratory Judgment and Injunction against P & L Investment Corporation. The School Board alleged that the street known as Tiger Drive was dedicated for public use by statutory, formal non-statutory or informal dedication, and that P & L’s installation of water and sewerage lines down the middle of the roadway would deprive the School Board and the general public access to Hahnville High School. Plaintiff also prayed for injunctive relief. The trial court issued a temporary restraining order enjoining P & L from interfering with the general public’s use of Tiger Drive.
*50 Warren Landry intervened as defendant in the lawsuit. The School Board subsequently filed an amended petition, naming Angelo Puglise, Salvadore Puglise and Landry as co-defendants. After a bench trial on the merits, the trial judge entered a declaratory judgment in favor of P & L and its co-liquidators, ruling that the disputed roadway is the property of the defendants P & L, Angelo and Salvadore Puglise and Warren Landry. The judge also denied the School Board’s request for injunctive relief.
The School Board appeals the trial court’s judgment, specifying as its sole assignment of error that “[t]he trial court erred in failing to find that the 50 foot street known as ‘Tiger Drive’ is a dedicated public street, either by virtue of formal statutory dedication, formal non-statutory dedication, implied dedication, or tacit dedication.”
In Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938), the Louisiana Supreme Court concluded that there were two types of dedication in Louisiana: statutory and common law (informal or implied) dedication. A statutory dedication of land to public use occurs when a landowner files a subdivision plat in substantial conformity with the requirements of LSA-R.S. 33:5051 [2], even when no language in the subdivision plat dedicates thejjand to public use. Holmes v. Parish of St. Charles, 94-844 (La.App. 5 Cir. 3/15/95), 653 So.2d 653; Howard v. Louisiana Power & Light Company, 583 So.2d 503 (La.App. 5 Cir.1991). The intention to dedicate must, nevertheless, be clearly established. Howard v. Louisiana Power & Light, 583 So.2d at 507-508. If an act of dedication is doubtful, the court must look to the surrounding circumstances to determine whether there was intent to dedicate. Garrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980); Holmes v. Parish of St. Charles, 653 So.2d at 656. The public acquires not just a servitude to the dedicated property; statutory dedication vests full ownership in the municipality, parish or state. Garrett v. Pioneer Production Corp., 390 So.2d at 855; Howard v. Louisiana Power & Light Company, 583 So.2d at 507.
An informal or “implied” dedication results when there has been substantial compliance with the statute but the property owner has nevertheless sold property by reference to a recorded plat. Holmes v. Parish of St. Charles, 653 So.2d at 655; White v. Kinberger, 611 So.2d 810 (La.App. 3 Cir.1992), writ denied, 614 So.2d 84 (La.1993). A street “impliedly” dedicated isRsubject not to ownership, but to a servitude of use. Hailey v. Panno, 472 So.2d 97 (La.App. 5 Cir. *51 1985); Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d 459 (La.App. 4 Cir.), writ denied, 437 So.2d 1147 (La.1983).
Additionally, a road may be dedicated to public use under LSA-R.S. 48:491[3]. So called “tacit” dedication of a public road is made when a parish governing authority maintains a road for three years with actual or constructive knowledge of adjoining landowners. Herring v. Guitreau, 619 So.2d 1161 (La.App. 1 Cir.1993); Mioton v. Mannina, 536 So.2d 793 (La.App. 5 Cir.1988). The public acquires a servitude of passage by virtue of a tacit dedication. There is a two-pronged burden of proof under this statute. First, the proponent of the dedication must show there has been sufficient maintenance. Secondly, it must be shown that the landowner had knowledge of or acquiesced in the public maintenance. Jefferson Davis Parish School Bd. v. Fontenot, 505 So.2d 955 (La.App. 3 Cir.), writ denied, 511 So.2d 1154 (La.1987); Garner v. Waddill, 421 So.2d 1144 (La.App. 2 Cir.1982).
Whether sufficient maintenance has been performed by the public authority is a question of fact peculiarly within the purview of the trial court, and may not be overturned on appeal absent manifest error. Mioton v. Mannina, 536 So.2d at 795; Lincoln Parish Police Jury v. Davis, 559 So.2d 935 (La.App. 2 Cir.1990). This mode of dedication rests on the tacit consent of the landowner, which is considered established when he permits the public authorities to work the road or street without protest. Formation of a public road by tacit dedication cannot be thwarted simply by the landowner’s denial of knowledge of public maintenance. Rather, a totality of the evidence must be examined to determine if the landowner acquiesced in maintenance. Moret v. Williams, 582 So.2d 975 (La.App. 1 Cir.1991).
The jurisprudence has also recognized a fourth type of dedication, termed “formal non-statutory.” This type of dedieation is created when there exists some formal, express act of the owner which clearly shows an intent to dedicate. Anderson v. Police Jury of East Feliciana Par., |6452 So.2d 730 (La.App. 1 Cir.), writ denied, 457 So.2d 13 (La.1984). Absent a clear expression to the contrary, such dedication conveys ownership and applies to situations in which the statute (LSA-R.S. 33:5051) is not substantially complied with.
The category of formal non-statutory dedication was addressed in the case of Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App. 1 Cir.), writ denied, 251 La. 46, 202 So.2d 657 (1967). The Banta court was concerned with the implication of the court in Arkansas-Louisiana Gas Co. v. Parker Oil Co., supra, that a dedication not in substantial compliance with Act 134 of 1896 (the basis for statutory dedication in Louisiana, now LSA-R.S. 33:5051) amounted to a common law dedication conveying only a servitude, not ownership, to the public, where the intent of the grantor was not clearly expressed. The court concluded that a dedication not within the purview of Act 134 of 1896 does not preclude other forms of dedication such as that established by fifing of a plat, which would convey title in the dedicated land to the public. As Banta pointed out, this third category of dedication has been applied to acts occurring prior to Act 134 of 1896, when there was no provision for statutory dedication.
Since Banta, the courts have generally ignored the category of formal non-statutory dedication, preferring to cite Parker for the proposition that a dedication is either statutory (conveying ownership) or common law (conveying only a servitude to the public). See Becnel v. Citrus Lands of Louisiana, Inc., supra.
The School Board complains that the trial court erred in failing to find any form of dedication arising out of the facts of the ease. We note that as a reviewing court, we are bound to follow the clearly erroneous/mani *52 fest error standard as set forth by the Louisiana Supreme Court in Rosell v. ESCO., 549 So.2d 840 (La.1989) and more recently in Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991) when considering the factual findings made by the trial court:
... “if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have instructed the appellate courts that when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
The facts presented at trial were for the most part undisputed. The trial court found that 17the evidence did not show a dedication in any form. It is not for this Court to reweigh the evidence, but only to determine whether the trial court findings are clearly wrong.
The trial court did not abuse its discretion in finding that there was no statutory dedication. The School Board did not show substantial compliance with LSA-R.S. 33:5051. Furthermore, both Warren Landry and Robert Rice, the Superintendent of the School Board from 1973-1984, testified that no formal act of dedication of the disputed portion of Tiger Drive had ever been filed. Land surveyor Roland Bernard testified in a deposition taken on March 2, 1993, that based on his study of the survey attached to the act of sale, the later map and the act of exchange, he determined that Tiger Drive was not conveyed by P & L.
The School Board cites the act of sale and the act of exchange as formal, express acts conveying P & L’s intent to dedicate the 50 foot strip. However, correspondence between P & L, the School Board and the St. Charles Parish Police Jury in 1976 clearly shows that the parties understood that the 50 foot strip was still the property of P & L.
In a February 19, 1976 letter to Keller P. Madere, then administrative assistant to the superintendent of schools, P & L President Warren Landry wrote:
Please be advised that it is the intention of our company to dedicate to the St. Charles Police Jury the fifty foot street along the Western property line of the new Hahn-ville High School.
We are willing to make this dedication at any time that the Police Jury is ready to accept it.
On the same date, Mr. Landry wrote to Mr. Harold Crow of the Planning and Zoning Commission, requesting the commission’s approval to dedicate the 50 foot street.
On March 10, 1976, Inez Schillaci, secretary of the Police Jury, wrote to the School Board:
Please be advised that at its meeting held March 1, 1976, the Police Jury discussed the proposed dedication of Second Street in Boutte.
It will be necessary for you to file an Act of Dedication on the improved portion of Second Street. Upon its acceptance, the Police Jury will maintain this street.
In a letter dated March 12, 1976, Mr. Madere wrote to the Police Jury:
... My understanding of the situation is that the Police Jury traded the original Second Street, appearing on the map of Mosella Townsite approved by the Jury in August of 1938, for Mosella Townsite Lots 3 and 18 that extend |8inward a total of 260' from Highway 90. The 50' wide strip of property that would be an extension of Second Street, bordering the entire length of the western property line of Hahnville High School, belongs to P. & L. Investment Corp. ...
... The street is currently hard surfaced approximately 530' inward from Highway 90 to the first turn-in to Hahnville High School. Thus, P. & L. Investment Corp. would be dedicating roughly 270' of its property.
It was clearly the understanding of the parties as of March, 1976, that P & L was the owner of the entire 50 foot strip. The School Board argues that the series of *53 letters between Landry, Madere and the Police Jury evidences P & L’s intent to dedicate the property and therefore at least supports a finding of implied dedication. The evidence at trial does not, however, bear this out.
Mr. Landry testified in a deposition on August 3,1993, (Exhibit P-6) that it was Mr. Madere who initially approached him regarding the possible dedication of the 50 foot strip and that he told Madere he would not be willing to do so until the Police Jury brought the road up to parish specifications for dedicated roadways. This, to Landry, included providing surfacing and drainage for the entire length of the 50 foot street, not solely the portion being used by the school. Landry testified that it was not his intention to dedicate the 50 foot street unless and until such improvements were made. The evidence shows that these improvements were never made to the entire 50 foot street.
In a letter dated March 22, 1976, Mr. Landry requested that the Police Jury have its attorney draw up an act of dedication. The Police Jury in turn sent a letter to its attorney requesting that he prepare such an act. There was no evidence at trial, however, that any formal act of dedication was ever filed.
On August 30, 1982, P & L granted a servitude of passage on the 50 foot strip to Charles Lagarde, whose property abutted on the western side of the strip. It is unlikely that P & L would have granted a right of passage to a piece of property if its intent was to dedicate the property or if it was the belief of the company’s shareholders that the 50 foot strip was already a public street. Larry Sesser, chief of physical plant operations for the School Board, testified that in 1981 or 1982, the School Board received word from the Police Jury that the parish would not do any future repairs on the portion of Tiger Drive south of the gate, as it was private property. Bobby Stephenson, principal of Hahnville High School for 17 years, testified that he was told that Tiger |9Drive did not belong to the School Board, and that he assumed the road belonged to the Puglis-es. This speaks to the parish’s and the School Board’s continuing belief that the 50 foot roadway was not dedicated.
It is noted that, while the School Board claims the disputed portion of Tiger Drive is dedicated to public use, the principal of Hahnville High School at times ordered that the gate that stood on the disputed portion be locked, impeding the public’s access. It is further noted that barricades were used at the behest of the principal in order to limit vehicular traffic on school grounds.
We cannot find that the trial court was manifestly erroneous in finding that there was no tacit dedication of the property. There was a great deal of testimony regarding the maintenance of the disputed portion of Tiger Drive. It was undisputed at trial that the Police Jury and/or the School Board were responsible for improvements on the disputed portion of Tiger Drive. However, School Board witnesses were vague as to the extent of maintenance done to the disputed portion (the paved part of the road south of the gate) by the parish or the School Board over the years.
Larry Sesser testified that repairs on the street both north and south of the gate were done by the parish until the early 1980’s, when the parish discontinued maintenance on the “private” portion or the street. From that time on, the maintenance of the disputed portion was done by a private contractor hired by the School Board. On cross-examination, Sesser testified that the only work done by the private contractor on the disputed portion was a resurfacing job. Sesser could not produce any work orders or other records of maintenance or repair work done on the disputed portion of Tiger Drive.
Calvin Harris, a blacktop foreman with the Public Works Department, testified that his work crew laid the blacktop portion of Tiger Drive, from Highway 90 to just past the gate. His crew also repaired potholes on the blacktop portion (up to a point which was ten feet past the gate), but did no work on the concrete portion of the street[4]. Mr. Harris *54 testified that he keeps log books to show the locations where he works each day, but his entries do not include the Imspecific work done at each site. Mr. Harris did not produce any written record of work done on Tiger Drive.
Danny Hebert, the Director of Public Works and Sewerage for St. Charles Parish, testified that a search of his department’s records from 1985 to present did not show documentation of any work done on Tiger Drive. Mr. Hebert indicated that records prior to 1985 were unavailable.
Mr. Stephenson, the school principal, testified that he remembers some instances where parish trucks were on school grounds to fill potholes on Tiger Drive with shells. However, he did not know on which area of the road the work was done, nor could he provide any written documentation of the work. Mr. Stephenson did not recall any work that was done on the concrete portion of the road.
While testimony at trial shows that P & L had real or constructive knowledge of improvements made on the disputed portion of Tiger Drive, the trial court did not find that the School Board met the other part of the two-pronged test for tacit dedication: that sufficient maintenance be shown. As was discussed above, the question of whether sufficient maintenance has been performed to constitute a tacit dedication is a question of fact which may not be overturned on appeal absent manifest error. Mioton v. Mannina, supra. We find no such error here.
Moreover, appellant’s claim that the district court failed to consider the facts in light of the categories of implied dedication and formal non-statutory dedication has no merit. As discussed above, formal non-statutory dedication is a category which is no longer generally applied in the jurisprudence. Also, considering the foregoing evidence at trial, neither of the two categories is applicable in this case. Finally, in its Reasons for Judgment, the trial court stated that the disputed roadway was not dedicated to a public use under any of the forms of dedication. We find no error in the trial court’s judgment.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are assessed against plaintiff.
AFFIRMED.

. In its Judgment, the trial court referred to an October 4, 1990 survey by Roland P. Bernard, a copy of which is made a part of this Opinion. See Appendix.

. Sec. 5051. Platting land into squares or lots before sale; filing map of land; limitations on dedications
A. Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of the same:
(1) Cause the real estate to be surveyed and platted or subdivided by a licensed land surveyor into lots or blocks, or both, each designated by number.
(2) Set stakes, which shall be permanent in nature, at all of the comers of every and block thereof, properly marked so as to designate the correct number of each lot and block.
(3) Write the legal description of the land on the plat or map, and cause to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish, a correct map of the real estate so divided.
B. The map referenced in Subsection A of this Section shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to the government survey.
(2) The number of squares by numerals from one up, and the dimensions of each square in feet and inches.
(3) The number of each lot or subdivision of a square and its dimensions in feet and inches.
(4) The name of each street and alley and its length and width in feet and inches.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed land surveyor of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys, and public squares or plats shown on the map to public use.

. LSA-R.S. 48:491 reads as follows in pertinent part:
B. All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by authority of a parish governing authority within its parish, or by authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, unless in the parish of Vermilion ...

. Harris testified that all concrete work is done by a separate subdivision of the Public Works Department.